IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2015 Term

**FILED**

**October 8, 2015**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 14-0920

TEX S.,
Petitioner Below, Petitioner

v.

KAREN PSZCZOLKOWSKI, Warden,
Northern Correction Facility,
Respondent Below, Respondent

---

Appeal from the Circuit Court of Morgan County
The Honorable Christopher C. Wilkes, Judge
Civil Action No. 13-P-16

AFFIRMED

---

Submitted:  September 16, 2015
Filed:  October 8, 2015

Kevin D. Mills, Esq.                      Patrick Morrisey, Esq.
Shawn R. McDermott, Esq.                   Attorney General
MillsMcDermott, PLLC                       Shannon Frederick Kiser, Esq.
Martinsburg, West Virginia                 Assistant Attorney General
Counsel for the Petitioner                 Charleston, West Virginia
                                           Counsel for the Respondent

CHIEF JUSTICE WORKMAN delivered the Opinion of the Court.
JUSTICE BENJAMIN concurs and reserves the right to file a separate opinion.

SYLLABUS BY THE COURT

1.      "In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review."  Syl. Pt. 1, *Mathena v. Haines*, 219 W. Va. 417, 633 S.E.2d 771 (2006).

2.      "On an appeal to this Court the appellant bears the burden of showing that there was error in the proceedings below resulting in the judgment of which he complains, all presumptions being in favor of the correctness of the proceedings and judgment in and of the trial court."  Syl. Pt. 2, *Perdue v. Coiner*, 156 W. Va. 467, 194 S.E.2d 657 (1973).

3.      "A court having jurisdiction over habeas corpus proceedings may deny a petition for a writ of habeas corpus without a hearing and without appointing counsel for the petitioner if the petition, exhibits, affidavits or other documentary evidence filed therewith show to such court's satisfaction that the petitioner is entitled to no relief."  Syl. Pt. 1, *Perdue v. Coiner*, 156 W. Va. 467, 194 S.E.2d 657 (1973).

i

4.     "In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984):  (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Syl. Pt. 5, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995).

5.     "In reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions.  Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue." Syl. Pt. 6, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995).

Workman, Chief Justice:

This case is before the Court upon the appeal of Tex S.[1] ("the Petitioner") from the August 22, 2014, order entered by the Circuit Court of Morgan County, West Virginia, denying the Petitioner's motion for reconsideration of the circuit court's order denying his petition for habeas corpus relief that was entered on June 6, 2014. The Petitioner argues that the circuit court erred: 1) in failing to grant an evidentiary hearing on the habeas petition; 2) in failing to find ineffective assistance of counsel; 3) in determining that the Petitioner was not wrongfully convicted by the introduction of scientifically invalid expert testimony that the victim was sexually abused; and 4) in failing to grant leave for discovery regarding the forensic testing performed by the State.[2] Based upon a review of the record, the parties' briefs and arguments, and all other matters submitted before the Court, we affirm the circuit court's decision.

---

[1]Pursuant to West Virginia Rule of Appellate Procedure 40(e), we use the Petitioner's initials and refer to the child victim involved simply as "the victim." *See also State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

[2]The Petitioner originally listed the Respondent as David Ballard, Warden, Mount Olive Correctional Center. The Petitioner is now housed in the Northern Correctional Facility, therefore, we have substituted Karen Pszczolkowski, who is the warden of that facility. *See* W. Va. R. App. P. 41. Because the Petitioner's claims stem from the underlying trial in this matter, we refer to the Respondent simply as "the State."

1

## I. Factual and Procedural History

### A. Underlying Trial

This matter arises from the January 2, 2007, indictment of the Petitioner on one count of sexual assault in the first degree and one count of sexual abuse by a parent or guardian. As a backdrop to the majority of the Petitioner's habeas claims, it is important to explain at the outset that as result of the indictment, the Petitioner retained attorney Paul Lane to represent him. Prior to trial, Mr. Lane was involved in a motorcycle accident and he suffered a head injury. The West Virginia State Bar suspended his license to practice law and appointed other local attorneys to represent his clients.[3] Christopher Prezioso was appointed to represent the Petitioner. Three months after the accident, upon a showing that he had recovered from his injuries, Mr. Lane's law license was reinstated,[4] and he was retained by the Petitioner to continue with his representation of the Petitioner at the

---

[3]By order entered August 27, 2007, the Circuit Court of Jefferson County appointed various counsel to substitute for Mr. Lane in all cases, noting that this action was being taken "due to . . . [Mr. Lane's] serious motorcycle accident which has rendered him currently incapacitated and unable personally to protect the interests of his clients." This measure stemmed not from any lawyer disciplinary action, but through the West Virginia State Bar Lawyer Assistance Committee due to a petition filed to limit Mr. Lane's practice.

[4]By order entered in the Circuit Court of Jefferson County on October 10, 2007, the circuit court rescinded its August 27, 2007, order appointing various counsel to stand in for Mr. Lane. The circuit court granted Mr. Lane's petition to rescind the August 27, 2007, order based upon a finding of "good cause" as Mr. Lane "represented [to the court] that he has been discharged from hospitalization and out-patient therapy and recovered to the extent that he is able to return to the practice of law and to protect his client's interests."

Petitioner's request.[5]

The Petitioner's trial began on November 18, 2008, and lasted two days. The evidence at trial showed that between the hours of 10:00 p.m. on April 6, 2006, and 5:00 a.m. on April 7, 2006, the Petitioner was taking care of his three step-children while their mother was working. The Petitioner's then four-year-old stepdaughter, who is the victim, was asleep on a couch in the living room of her home awaiting her mother's return from work. The two older stepsons were asleep in a bedroom that they shared, which was located in the basement of the home. After the two older children left for school on the morning of April 7, 2006, the victim told her mother that during the night "Tex put his pee pee in my mouth and peed and kept it there until I swallowed."[6]

---

[5]The record demonstrates that the proceedings in the Petitioner's case had been continued due to the Petitioner's desire that Mr. Lane represent him.

[6]The victim, who was seven years old at the time of trial, testified. She, however, stated that she could not recall the events in question and the trial court determined that she was unavailable under Rule 804(a)(3) of the West Virginia Rules of Evidence. The trial court then determined that statements made by the child to her mother and Ms. Leahy, a nurse, were admissible under the medical treatment and present sense impression exceptions, West Virginia Rule of Evidence 803(1) and (4), or the general catch-all exception pursuant to the former West Virginia Rule of Evidence 804(b)(5), which is now Rule 807 of the West Virginia Rules of Evidence ("Residual exception").

The issue of whether the trial court properly admitted the child's statements to her mother and Ms. Leahy was the only error that this Court granted to hear on direct appeal. The Court affirmed the Petitioner's conviction by memorandum decision issued on February 11, 2011, determining that the Petitioner's right to confront the witness against him was not violated. *See State v. Tex S.*, No. 35540 (W. Va. Supreme Court, February 11, 2011)(memorandum decision).

The mother, who previously sustained a traumatic brain injury in a car accident, did not immediately take the child to the hospital that day. During the day, she testified that she struggled with what her daughter had told her. She stated that she called the pastor at their church during the afternoon and spoke with him about it. As a result of that conversation, later that afternoon the mother took her child to Winchester Medical Center where the child was examined by Cynthia Leahy, a nurse who works in the hospital's forensic nurse program.

Ms. Leahy testified that the child told her:

I was asleep on the couch. Something came out of it and went down my throat. It had a yucky taste. I was still asleep while he was doing that. I remember it. I still have a yucky taste from it. I cried this morning because I still had that taste.

Ms. Leahy also stated that she collected samples from the child's mouth using lip swabs, oral rinse, and floss.

Corporal Tony Link of the Morgan County Sheriff's Department investigated the crime. He testified that he was dispatched to Winchester Medical Center where he met Ms. Leahy. The officer took possession of the evidence obtained from the victim by Ms. Leahy so that forensic testing could be done. Corporal Link also contacted the Petitioner and asked him if he would come into the Sheriff's Department to speak to the officer about the alleged crime. According to Corporal Link, the Petitioner voluntarily came in to speak with

4

the officer. The officer testified that he gave the Petitioner his *Miranda*[7] rights and that the Petitioner understood that he did not have to speak with the officer. The Petitioner also signed a waiver of rights form before voluntarily giving the officer a statement in which the Petitioner denied any wrongdoing. The officer testified that the Petitioner told him that

> due to his wife's mental problems, he did not doubt if his wife had did [sic] something while he was sleeping. . . . [The Petitioner] . . . stated that he woke up one morning. His wife was down there playing with it. Upon trying to clarify what he was getting at, I just more or less basically asked . . . [the Petitioner]–I stated so you're telling me you woke up one morning and your wife was jacking you off, collected semen, kept it and gave it to her daughter to drink. And . . . [the Petitioner] stated, yes, but I don't know what she did with it.

The record indicates that the samples that were collected at the hospital by Ms. Leahy were tested at the West Virginia State Police Laboratory. David Miller, an expert in forensic science, testified to receiving not only the samples obtained from the victim, but also a pillow that was taken from the victim's home that the victim was sleeping on the night of the incident. Mr. Miller stated that regarding the two lip swabs he examined,

> We . . . performed what's called a presumptive test for seminal fluid. A presumptive test for seminal fluid when positive indicates that seminal fluid may be present but is not an identification test. There are other items other than seminal fluid such as yeast and bacteria that can cause a positive reaction with this presumptive test.
>      In this case, the lip swabs were positive with the

---

[7]*See Miranda v. Arizona*, 384 U.S. 436 (1966).

5

> presumptive tests. . . . Having that result, we then proceeded to a confirmatory test for seminal fluid. That particular test involved testing for a protein that's produced in the prostate gland of males called P30. It's also known as PSA or prostate-specific antigen. It's the protein that's tested in prostate cancer. . . . This test was also positive allowing me to say that seminal fluid was identified in the lip, lip area swabs.

Angela Gill, an expert in the field of forensic science with a specialty in DNA, testified that although the presence of seminal fluid was found on the swabs, she did not find any Y chromosomes present. Ms. Gill stated that because there were no Y chromosomes, she could not isolate the male DNA that would be located on that Y chromosome. The Y chromosome would have been found on sperm cells, but there were no sperm cells present in the seminal fluid, which carries the cells. There was testimony from Mr. Miller that there were a number of situations where sperm cells might not be found in seminal fluid including "vasectomized males, there can be males that are aspermic or do not produce sperm cells[,] . . . [or] there could just be so few a number of cells that we do not identify them." Without the DNA, Ms. Gill could not link the seminal fluid to a specific male. Ms. Gill did find male DNA, which was not associated with seminal fluid, on the pillow she examined; however, the Petitioner was excluded as the primary source of that DNA. Further, as revealed during the cross-examination of the State's forensic expert witnesses by the Petitioner's trial counsel, there was no DNA match that tied any evidence the State had obtained in the case to the Petitioner.

The State also called Chanin Kennedy, a psychologist, as an expert witness. Ms. Kennedy testified that in her opinion the child was sexually abused and that the child was not susceptible to suggestion.

The Petitioner did not testify. He called one witness, Dr. Fred Krieg, who was an expert in the areas of psychology and professional counseling. Contrary to the Petitioner's argument on appeal that "trial counsel failed to disclose his expert, Dr. Krieg, until the day of trial, . . ." the record demonstrates that the State had received an expert witness disclosure, which identified Dr. Krieg and which provided Dr. Krieg's curriculum vitae prior to the day of trial. The State, however, was not provided with a written summary of Dr. Krieg's report or a copy of his report until the day before trial. The State only sought to challenge the testing or methodology that Dr. Krieg used in order to reach the opinion that the Petitioner did not fit the profile of a sex offender. The State did not object to the late disclosure of the expert's report or summary.

Due to the State's challenge, the trial court held a *Daubert*[8] hearing on the

----

[8]*See* Syl. Pt. 4, *Gentry v. Mangum*, 195 W. Va. 512, 466 S.E.2d 171 (1995) ("When scientific evidence is proffered, a circuit court in its 'gatekeeper' role under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and *Wilt v. Buracker*, 191 W.Va. 39, 443 S.E.2d 196 (1993), *cert denied*, 511 U.S. 1129, 114 S.Ct. 2137, 128 L.Ed.2d 867 (1994), must engage in a two-part analysis in regard to the expert testimony. First, the circuit court must determine whether the expert testimony reflects
(continued...)

7

State's motion to exclude that portion of Dr. Krieg's report in which he opined that the Petitioner did not fit the profile of a sex offender. The State directed the trial court to that portion of Dr. Krieg's report in which the doctor stated that "there is no exact profile of a sex offender."[9] The doctor also stated in the report that "[r]esearch has consistently shown that there is no such thing as a sex offender profile." Despite the lack of any profile, Dr. Krieg opined that it was clear that the Petitioner was at "the low-end risk of being a sexual offender[.]"[10] The trial court determined that, based upon the expert's report,

> [r]esearch has consistently shown there is no such thing as a sex

[8](...continued)
scientific knowledge, whether the findings are derived by scientific method, and whether the work product amounts to good science. Second, the circuit court must ensure that the scientific testimony is relevant to the task at hand."); *accord* Syl. Pt. 4, *State v. Leep*, 212 W. Va. 57, 569 S.E.2d 133 (2002) (applying the law enunciated in *Gentry* in a criminal action).

[9]*See Gentry*, 195 W. Va. at 514, 466 S.E.2d at 173, Syl. Pt. 6 ("The question of admissibility under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and *Wilt v. Buracker*, 191 W.Va. 39, 443 S.E.2d 196 (1993), *cert denied*, 511 U.S. 1129, 114 S.Ct. 2137, 128 L.Ed.2d 867 (1994) only arises if it is first established that the testimony deals with 'scientific knowledge.' 'Scientific' implies a grounding in the methods and procedures of science while 'knowledge' connotes more than subjective belief or unsupported speculation. In order to qualify as 'scientific knowledge,' an inference or assertion must be derived by the scientific method. It is the circuit court's responsibility initially to determine whether the expert's proposed testimony amounts to 'scientific knowledge' and, in doing so, to analyze not what the experts say, but what basis they have for saying it.").

[10]*See also* Syl. Pt. 2, *Ballard v. Hunt*, 235 W. Va. 100, 772 S.E.2d 199 (2015)("The opinion evidence of an expert witness proffered by the State in a criminal prosecution, merely to show that the accused has the character trait of a pedophile under the *Diagnostic and Statistical Manual of Mental Disorders* of the American Psychiatric Association, is inadmissible pursuant to Rule 404(a) of the West Virginia Rules of Evidence to prove that on a particular occasion the accused acted in accordance with that character trait.").

offender profile.  So I don't believe and I don't find that it would be permissible as the evidence would not be admissible that he does not fit the sex offender profile if your own expert . . . says the research show there's no such thing.[11]

Notwithstanding the exclusion of this portion of Dr. Krieg's report, the Petitioner was allowed to use Dr. Krieg to attack Ms. Kennedy's opinion that the child was sexually abused and was not a child who was subject to suggestion.  Dr. Krieg testified that a lot of the information upon which Ms. Kennedy based her opinion was provided by the victim's mother and was not substantiated elsewhere.

At the conclusion of the evidence, the jury convicted the Petitioner of sexual assault in the first degree and sexual abuse by a parent or guardian.  The trial court sentenced the Petitioner to twenty-five to one hundred years[12] in the penitentiary for his conviction of

___

[11]The Petitioner's trial counsel, during Dr. Krieg's testimony, again raised the issue that the expert should be allowed to testify that the Petitioner was a low risk for being a sex offender.  The trial court conducted another *Daubert* hearing, outside the presence of the jury, before again concluding that there was not enough evidence presented upon which that court could conclude that the test relied upon by the expert in evaluating the Petitioner fit within the *Daubert* standard.  *See supra* nn.8-9.

The trial court's exclusion of Dr. Krieg's expert testimony regarding the Petitioner's propensity for being a sex offender was appealed to this Court.  We declined to hear argument regarding this issue. *See supra* n.6 and *infra* n.13.

[12]By order entered July 29, 2014, the circuit court corrected the sentence imposed on this count pursuant to West Virginia Rule of Criminal Procedure 35 as the statute in place at the time the offense was committed only authorized an indeterminate sentence of not less than fifteen nor more than thirty-five years. *See* W. Va. Code § 61-8B-3 (2006).
(continued...)

9

sexual assault in the first degree and ten to twenty years for his conviction of sexual abuse by a custodian. The trial court ordered the sentences to run consecutively. On June 13, 2009, shortly after Petitioner was sentenced, his trial attorney committed suicide.[13]

## B. Habeas Proceeding

The Petitioner filed a petition for habeas corpus on March 12, 2013. The Petitioner set forth various grounds for relief including ineffective assistance of counsel, the introduction by the State of "faulty scientific evidence," which involved the State's expert

---

[12](...continued)
Consequently, when the sentencing error was brought to the circuit court's attention, it resentenced the Petitioner to fifteen to thirty-five years on that count and removed the fine. The remainder of the sentence the circuit court previously imposed was to remain in effect.

The Petitioner appealed the circuit court's correction of the sentence because the circuit court did not give him another de novo resentencing hearing. We affirmed the circuit court's decision in *State v. Tex S.*, No. 14-0891, __ W. Va. __, __S.E.2d___ (2015).

[13]The Petitioner retained new counsel, Jim Kratovil, to file an appeal to this Court. The Petitioner raised four assignments of error including: 1) the trial court erred in allowing the testimony of the child to be admitted into evidence through the testimony of the mother, forensic nurse and police officer; 2) the trial court erred in failing to grant the Petitioner's motion to dismiss based upon a violation of his right to a speedy trial; 3) the trial court erred in precluding the Petitioner's only witness, Dr. Krieg, to testify regarding the Petitioner's propensity for being a sex offender; and 4) the Petitioner had not been present at all critical stages of trial. As previously mentioned, this Court granted the petition on the single issue of whether the trial court erred in allowing the testimony of the child. The Court affirmed the Petitioner's conviction in a memorandum decision issued on February 11, 2011. *See supra* n.6.

On May 11, 2011, the Petitioner, through yet another retained counsel, who is his current counsel, filed a petition for writ of certiorari with the United States Supreme Court on the issue of the child's testimony due to her unavailability and the right to confrontation. On October 3, 2011, United States Supreme Court denied the petition.

10

testifying that the victim was diagnosed as a sexually-abused child; and the failure by the circuit court to grant leave for discovery regarding previously-examined forensic evidence.

The circuit court set a briefing schedule for briefs to be submitted by the parties. By order entered June 6, 2014, the circuit court determined that "[h]aving been fully briefed on the matters, this Court finds that it would not be aided by further discussion and dispenses with the need for a hearing." The circuit court denied the Petitioner's request for habeas relief by methodically addressing every single claim raised by the Petitioner in his petition, relying heavily upon the underlying trial transcript and record. The Petitioner filed a motion for reconsideration, which the circuit court denied by order enter August 18, 2014.

## II. Standard of Review

We have held that

> [i]n reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review.

Syl. Pt. 1, *Mathena v. Haines*, 219 W. Va. 417, 633 S.E.2d 771 (2006). Further, "[o]n an appeal to this Court the appellant bears the burden of showing that there was error in the proceedings below resulting in the judgment of which he complains, all presumptions being in favor of the correctness of the proceedings and judgment in and of the trial court." Syl.

11

Pt. 2, *Perdue v. Coiner*, 156 W. Va. 467, 194 S.E.2d 657 (1973).   It is with these standards in mind that we undertake review of the issues before us.

### III.  Discussion

### A.  Denial of an omnibus hearing

The first issue is whether the circuit court erred in failing to grant the Petitioner's motion for an omnibus evidentiary hearing.  The Petitioner argues that the circuit court failed to make any specific findings of fact and conclusions of law as to why an evidentiary hearing was not necessary.  The Petitioner maintains that the issues raised established probable cause that he may be entitled to relief and an evidentiary hearing was necessary to rule upon the disputed facts.  The Petitioner further contends that had an evidentiary hearing been held he would have

> sought to present the expert testimony of Dr. William Hauda, an expert in the field of forensic science, who would have testified regarding the problems with the State's purported identification of seminal fluid, an attorney expert with expertise in the area of professional responsibility and competence of attorneys, a forensic psychologist expert regarding the scientific inability to diagnose a child as a victim of sexual abuse, and other fact witnesses who would have testified regarding Paul Lane's [,the Petitioner's trial counsel's,] mental condition following his head injury.  Through the evidentiary hearing, . . . [the Petitioner] also requested discovery regarding forensic testing, that had previously not been disclosed, as well as independent testing of the preserved evidence.

The State responds that the circuit court issued a twenty-eight page order

denying the Petitioner habeas relief. In its order, the circuit court discusses the merits of all the Petitioner's habeas claims and finds that a hearing would provide no further evidence warranting relief.

Rule 9(a) of the Rules Governing Post-Conviction Habeas Corpus Proceedings in West Virginia provides as follows:

> If the petition is not dismissed at a previous stage in the proceeding, *the circuit court*, after the answer is filed, *shall, upon a review of the record, if any, determine whether an evidentiary hearing is required. If the court determines that an evidentiary hearing is not required, the court shall include in its final order findings of fact and conclusions of law as to why an evidentiary hearing was not required.*

(Emphasis added).

In syllabus point one of *Perdue*, this Court held:

> A court having jurisdiction over habeas corpus proceedings may deny a petition for a writ of habeas corpus *without a hearing and without appointing counsel for the petitioner if the petition, exhibits, affidavits or other documentary evidence filed therewith show to such court's satisfaction that the petitioner is entitled to no relief.*

156 W. Va. at 467, 194 S.E.2d at 658 (emphasis added); *see* W. Va. Code 53-4A-7(a) (2008) ("If the petition, affidavits, exhibits, records and other documentary evidence attached thereto, or the return or other pleadings, or the record in the proceedings which resulted in the conviction and sentence, or the record or records in a proceeding or proceedings on a

13

prior petition or petitions filed under the provisions of this article, or the record or records in any other proceeding or proceedings instituted by the petitioner to secure relief from his conviction or sentence, show to the satisfaction of the court that the petitioner is entitled to no relief, or that the contention or contentions and grounds (in fact or law) advanced have been previously and finally adjudicated or waived, the court shall enter an order denying the relief sought.").

Further, in *State ex rel. Valentine v. Watkins*, 208 W. Va. 26, 537 S.E.2d 647 (2000), this Court discussed the standard for review of a circuit court's decision to grant or to deny a habeas corpus petition. "When considering whether such a petition requesting post-conviction habeas corpus relief has stated grounds warranting the issuance of the writ, courts typically are afforded broad discretion." *Id.* at 31, 537 S.E.2d at 652. We also stated in *Gibson v. Dale*, 173 W. Va. 681, 319 S.E.2d 806 (1984), "the post-conviction habeas corpus statute leaves the decision of whether to conduct an evidentiary hearing or to compel the State to produce evidence in its possession in large part to the sound discretion of the court before which the writ is made returnable." *Id.* at 688, 319 S.E.2d at 813. The discretion afforded circuit courts is not unlimited; "the court must be guided by the necessities of each particular case." *Id.* at 688-89, 319 S.E.2d at 813.

In determining whether the circuit court abused its discretion in denying the

Petitioner habeas relief without affording him a hearing, we readily dispense with the Petitioner's argument that the circuit court failed to make any specific findings of fact and conclusions of law as to why an evidentiary hearing was not necessary. Regarding its decision to not hold an omnibus hearing, the circuit court expressly stated in its order that "[h]aving been fully briefed[14] on the matters, this Court finds that it would not be aided by further discussion and dispenses with the need for a hearing." The circuit court then proceeded to address each issue raised in the petition, including specific references to the trial transcript. Consequently, we find the circuit court's findings adequately support its determination that an evidentiary hearing was not necessary.

We also disagree with the Petitioner's argument that an evidentiary hearing was necessary to rule upon the disputed factual issues raised in his petition. The Petitioner maintains that the primary purpose of an evidentiary hearing was for the circuit court to consider expert testimony in the areas of forensic science, professional responsibility and competency of attorneys, and forensic psychologist expert relating the diagnosis of the victim being sexually abused. Thus, the need for expert testimony was solely for the purpose of attacking the Petitioner's trial counsel's strategy.

---

[14]The brief filed in the circuit court by the Petitioner regarding his habeas claims was seventy pages.

15

Thus, when examining the need for an evidentiary hearing in this case, we are guided by our law, which we have firmly adhered to, that the primary purpose of an omnibus hearing is grounded in providing the Court with evidence from "the most significant witness, the trial attorney," in order to give that individual "the opportunity to explain the motive and reason behind his or her trial behavior." *State v. Miller*, 194 W. Va. 3, 15, 459 S.E.2d 114, 126 (1995). It is the need for the trial attorney's testimony that generally precludes this Court from reviewing any ineffective assistance of counsel claim on direct appeal. *See id.* at 15, 459 S.E.2d at 126; *see also State v. Meadows*, 231 W. Va. 10, 24, 743 S.E.2d 318, 332 (2013); *State v. Woodson*, 222 W. Va. 607, 620-21; 671 S.E.2d 438, 451-52 (2008); *State v. Frye*, 221 W. Va. 154, 155-58, 650 S.E.2d 574, 575-78 (2006). As we stressed in *Miller*, "[t]he test of ineffectiveness has little or nothing to do with what the *best* lawyers would have done. Nor is the test even what most good lawyers would have done." 194 W. Va. at 16, 459 S.E.2d at 127. Rather, the focus of any habeas evidentiary hearing as it relates to ineffective assistance of counsel is affording a petitioner's trial counsel an opportunity to explain his actions during the underlying trial. *See id.* at 17, 459 S.E.2d at 128 (stating "we intelligently cannot determine the merits of . . . ineffective assistance claim[s] without an adequate record giving trial counsel the courtesy of being able to explain his trial actions."). In the instant case, as discussed in greater detail *infra* in section III. B. of this opinion, we find that the Petitioner's ineffective assistance of counsel claims are all grounded in trial strategy. Due to the Petitioner's trial counsel's death, the most critical witness for determination of the

Petitioner's ineffective assistance of counsel claims cannot testify at an evidentiary hearing and offer any explanation that could assist the trier of fact.

This Court has upheld the denial of habeas relief where the circuit court has determined that an evidentiary hearing is not necessary. *See State ex rel. Farmer v. Trent*, 206 W. Va. 231, 523 S.E.2d 547 (1999); *State ex rel. Waldron v. Scott*, 222 W. Va. 122, 663 S.E.2d 576 (2008). Specifically, in *Waldron*, we stated:

> Upon review of the final order, it is clear that the circuit court concluded that an evidentiary hearing on the appellant's habeas petition was not necessary. The circuit court issued a lengthy order meticulously addressing each of the six issues raised by the appellant and explaining in detail why the alleged errors were without merit. To the extent that the court erred by failing to specifically state in its order that an evidentiary hearing was not required, this Court has acknowledged that, "[m]ost errors, including constitutional ones are subject to harmless error analysis." *Sullivan v. Louisiana*, 508 U.S. 275, 278, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993). Likewise, this Court has held that: """Failure to observe a constitutional right constitutes reversible error unless it can be shown that the error was harmless beyond a reasonable doubt." Syl. pt. 5, *State ex rel. Grob v. Bailey [Blair]*,158 W. Va. 647, 214 S.E.2d 330 (1975).' Syllabus Point 1, *Maxey v. Bordenkircher*, [175] W. Va. [49], 330 S.E.2d 859 (1985)." Syllabus Point 3, *State v. Barrow*, 178 W. Va. 406, 359 S.E.2d 844 (1987). In this case, the circuit court addressed and disposed of each issue set forth in the appellant's habeas petition in such an exhaustive manner that there is no question as to why the appellant was denied an evidentiary hearing.

222 W. Va. at 125-26, 663 S.E.2d at 579-80. Unlike the *Waldron* case, the circuit court in the case sub judice expressly determined, based upon the extensive briefing in this case, that

17

an evidentiary hearing was not needed for it to determine the Petitioner's habeas claims. In an extensive twenty-eight page order the circuit court painstakingly addressed each and every claim for habeas relief raised by the Petitioner leaving no question why it found that an evidentiary hearing was not needed. Moreover, that the most significant witness could not testify regarding the decisions he made during trial lends further support for the trial court's determination on this issue.

## B. Petitioner's Ineffective assistance of counsel claims

The Petitioner sets forth numerous claims of ineffective assistance of counsel including his trial counsel: 1) failed to object to the ex post facto imposition of an enhanced statutory sentence for the Petitioner's conviction for first degree sexual assault at sentencing;[15] 2) ineffective assistance regarding forensic evidence purportedly identifying seminal fluid on the lips of the child victim;[16] 3) failed to litigate the admissibility of the

---

[15]*See supra* n.12. Concerning the Petitioner's ineffective assistance of counsel claim associated with this alleged error, the Petitioner cannot meet his burden of prejudice set forth in syllabus point nineteen of *State v. Thomas*, 157 W. Va. 640, 203 S.E.2d 445 (1974) ("In the determination of a claim that an accused was prejudiced by ineffective assistance of counsel violative of Article III, Section 14 of the West Virginia Constitution and the Sixth Amendment to the United States Constitution, courts should measure and compare the questioned counsel's performance by whether he exhibited the normal and customary degree of skill possessed by attorneys who are reasonably knowledgeable of criminal law, except that proved counsel error which does not affect the outcome of the case, will be regarded as harmless error."). We therefore find that the circuit court correctly denied the Petitioner habeas relief on his claim of ineffective assistance of counsel on this issue.

[16]This allegation encompasses the Petitioner's claims that his trial counsel failed to
(continued...)

Petitioner's statement to police prior to it being entered into evidence through Corporal Link; 4) failed to object to testimony from Corporal Link concerning the Petitioner's refusal to submit to DNA testing where the Petitioner had invoked his right against self-incrimination and right to counsel; 5) allowed an inadmissible out-of-court statement made by the victim to be entered into evidence through the cross-examination of Corporal Link; 6) failed to properly object to the victim's statements being entered into evidence through a forensic nurse and the victim's mother; 7) failed to disclose his expert, Dr. Krieg, until the day before trial, leading the trial court to hold a *Daubert* hearing, which resulted in the exclusion of portions of Dr. Krieg's anticipated trial testimony; and 8) failed to object to the State's expert, Chanin Kennedy, who testified that the victim was diagnosed as sexually abused.

We set forth the standard for assessing claims of ineffective assistance of counsel in syllabus points five and six of *Miller*:

> In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

---

[16](...continued) investigate the forensic evidence by requesting additional testing, failed to seek expert testimony, and failed to cross-examine the State's forensic experts about the "validity of the forensic testing identifying seminal fluid."

19

In reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue.

194 W. Va. 6-7, 459 S.E.2d at 117-18; *see Thomas*, 157 W. Va. at 643, 203 S.E.2d at 449, Syl. Pt. 19. Consequently, "[w]here a counsel's performance, attacked as ineffective, arises from occurrences involving strategy, tactics and arguable courses of action, his conduct will be deemed effectively assistive of his client's interests, unless no reasonably qualified defense attorney would have so acted in the defense of an accused." *Id.* at 643, 203 S.E.2d at 449, Syl. Pt. 21.

As we discussed in *Miller*,

[u]nder these rules and presumptions, the cases in which a defendant may prevail on the ground of ineffective assistance of counsel are few and far between one another. This result is no accident, but instead flows from deliberate policy decisions this Court and the United States Supreme Court have made mandating that "[j]udicial scrutiny of counsel's performance must be highly deferential" and prohibiting "[i]ntensive scrutiny of counsel and rigid requirements for acceptable assistance[.]" *Strickland*, 466 U.S. at 689-90, 104 S.Ct. at 2065-66, 80 L.Ed.2d at 694-95. In other words, *we always should presume strongly that counsel's performance was reasonable and adequate*. A defendant seeking to rebut this strong presumption of effectiveness bears a difficult burden because constitutionally acceptable performance is not defined narrowly and encompasses a "wide range."

20

194 W. Va. at 16, 459 S.E.2d at 127 (emphasis added). We further noted that

> [t]he widespread use of the tactic of attacking trial counsel by showing what "might have been" proves that nothing is clearer than hindsight--except perhaps the rule that we will not judge trial counsel's performance through hindsight. *See, e.g., Strickland v. Washington*, 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694 ("[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight"). As is often said, nothing is so easy as to be wise after the event. In reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions.

*Miller*, 194 W. Va. at 17, 459 S.E.2d at 128.

### 1. Petitioner's Ineffective Assistance Claim Regarding Forensic Evidence

The primary focus of the Petitioner's ineffective assistance of counsel claims is based upon his trial counsel's "failure to investigate and contest the forensic testing that purportedly identified seminal fluid on a lip swab taken from . . . [the victim.]" The Petitioner challenges the testing that was used by the State in its determination that seminal fluid was present, arguing that other types of testing would have been better and could have resulted in a determination that there was no seminal fluid. Thus, the Petitioner argues that his trial counsel failed to request additional forensic testing; failed to retain a forensic expert to offer an opinion, consult with or perform independent testing; failed to cross-examine the

21

State's witnesses regarding the purported identification of seminal fluid on the victim's lips; failed to understand the significance of the forensic evidence; and failed to offer logical argument regarding the evidence.

The circuit court thoroughly examined the Petitioner's claims regarding the forensic evidence and found the "Petitioner's argument that independent testing would have resulted in a different result" without merit. Further, the circuit court found the Petitioner offer of a "long list of preferred DNA testing methods as well as hindsight strategy decisions . . ." was "simply second[-]guess[ing] trial counsel's strategy." We agree with the circuit court.

A hearing was held on May 21, 2007, to determine whether the State could perform additional testing in order to ascertain whether any DNA was present. To do the additional testing meant that the State would consume the entirety of the second lip swab and the sample area on the pillow. The Petitioner's trial counsel, after discussing the issue with the Petitioner, told the trial court that "I explained to . . . [the Petitioner] again the consequences of agreeing to allow the state to – the State Police Lab to utilize the entire sample. And he wished to decline that." So the trial court ordered the State to refrain from any additional testing until the Petitioner's trial counsel notified the State of the name of the Petitioner's expert. The trial court gave the Petitioner thirty days to find an expert. The

22

Petitioner's trial counsel then stated on the record: "And in the interim, if we do – obviously if we do find the finances preclude that possibility, we'll of course notify the state also."

Subsequently, at an October 22, 2007, hearing, which occurred after the Petitioner's trial counsel's accident, the prosecuting attorney represented that in conversation she had with trial counsel before his accident, both the prosecutor and the Petitioner's trial counsel thought that the additional testing could be done at the State Police Lab. There was no viewing area at the State Police Lab, however, so they agreed that they would need to send the sample to an independent lab in order for the Petitioner's expert to observe the testing. As the prosecutor represented to the trial court regarding her conversation she had with the Petitioner's trial counsel:

> [W]e were anticipating that his independent expert would be able to watch the testing done at the state lab and neither of us had been aware that there is no viewing area at the state lab. So we actually have to now send it out to an independent lab to get it done if in fact the defendant wants his own expert to be viewing that.
> So that was the nature of the conversation and then obviously with the hospitalization of Mr. Lane [trial counsel], everything kind of got put on the back burner as far as being able to work through that because I believe while he had identified his own independent expert, the fact that the testing has to be done at an outside lab was going to be additional expenses for his client. . . .

The Petitioner's trial counsel responded:

> I can say after discussing the matter further with my client and discussing with the expert retained through TASA. .

23

. , which is a well-known defense attorneys assistance agency, we are going to elect not to have an expert at the official testing. However, I do want to reserve the right, depending upon the results of the test, to utilize an expert to challenge the state's results. So we'll not have an expert at the testing. We won't go to that length. We want to reserve the right to challenge the results through cross-examination.

The trial court then inquired of the Petitioner whether he understood the discussion and whether he agreed with what his trial counsel had advised the trial court. The Petitioner responded affirmatively to both inquiries.

The record demonstrates that contrary to the Petitioner's claims, his trial attorney did consult with experts, as the circuit court found, before deciding to embark on a calculated trial strategy to hold off on retaining an expert until the results of the additional testing conducted were obtained. Further, because none of the State's testing of the forensic evidence connected the Petitioner to the crime charged due to the lack of any DNA evidence, the Petitioner and his trial counsel found it unnecessary to hire an expert. Rather, the record of the trial demonstrates that the Petitioner's trial counsel effectively cross-examined every State forensic expert, as well as  Corporal Link, who obtained the evidence collected from the victim and her home, regarding the complete lack of any scientific forensic evidence that connected the Petitioner to the alleged crime.

Thus, we agree with the circuit court that the Petitioner now is seeking that we

24

embark on a journey filled with second-guessing a trial attorney's strategic decision in dealing with the investigation of forensic evidence, to the decisions made regarding experts, to the examination of witnesses, to the arguments made in closing. *Miller*, 194 W. Va. at 6-7, 203 S.E.2d at 117-18, Syl. Pt. 6; *Thomas*, 157 W. Va. at 643, 203 S.E.2d at 449, Syl. Pt. 21. We decline to do so. We find the Petitioner's arguments to be grounded in speculation and hindsight. "As is often said, nothing is so easy as to be wise after the event." *Miller*, 194 W. Va. at 17, 459 S.E.2d at 128. We further agree with the circuit court's determination that,

> [e]ven if trial counsel would have employed the methods of discovery and cross-examination requested in the instant petition, there is no evidence or persuasive argument that the results of the Petitioner's trial would have been different. The jury heard corroborating testimony regarding who was in the home and had access to . . . [the victim.] The victim made three consistent disclosures to adults shortly after the incident as to who assaulted her. This Court cannot find a reasonable probability that but for these alleged unprofessional errors, the result of the proceedings would have been different. Accordingly, [the] Petitioner has failed to establish a right to relief on the ground of ineffective assistance of counsel.

### 2. Petitioner's Remaining Claims of Ineffective Assistance of Counsel

The remainder of the Petitioner's claims of ineffective assistance of counsel are lumped together in his brief. The Petitioner first argues that his trial counsel was ineffective in failing to contest the admissibility of the Petitioner's statement to Corporal Link based upon voluntariness. *See State v. Farley*, 192 W. Va. 247, 452 S.E.2d 50 (1994). The record supports that the Petitioner's trial counsel did not file a motion to suppress the Petitioner's

25

statement because there was no factual basis to do so. The trial court correctly found that the "Petitioner does not allege that his statement was coerced or involuntary or would have been excluded had Trial Counsel objected. As such, this complaint fails to state error."

Next, the Petitioner complains that his trial counsel failed to object to Corporal Link's testimony concerning the Petitioner's initial refusal to submit to DNA testing where the Petitioner had invoked his Fifth Amendment privilege against self-incrimination and right to counsel. The Petitioner argues that the failure to object "fell below an objective standard of reasonableness and left the jury with the impression that . . . [the Petitioner] had something to hide by refusing the test." The record, however, again supports the circuit court's determination that the Petitioner's trial counsel's decision to refrain from objecting to this question was due to trial strategy. By not objecting, the Petitioner's trial counsel allowed the witness to testify that the reason the Petitioner had a problem with the initial request for DNA was due to his alleged mentally deranged wife obtaining semen from him and putting it in his stepdaughter's mouth. Getting this evidence admitted indirectly was strategically important in light of the fact that the Petitioner did not testify. Thus, the circuit court did not err in declining any habeas relief on this claim.

The third instance of alleged ineffective assistance of counsel stems from the Petitioner's trial counsel's cross-examination of Corporal Link, in which the officer testified

about the victim's out-of-court statement. The trial court had determined that the child victim's statement was properly admissible through her mother and the forensic nurse, Ms. Leahy, under exceptions to the hearsay rule set forth in West Virginia Rules of Evidence 803 and 804. The trial court, however, had determined that the statement was not admissible through Corporal Link as there was no applicable hearsay exception. A review of the trial transcript shows that contrary to the Petitioner's argument, his trial counsel did not "elicit[] inadmissible and inculpatory evidence against his client. . . ." Rather, the Petitioner's trial counsel sought to obtain testimony from the officer that showed flaws in the victim's statement, including testimony from the officer that they tried to get more information from the victim to no avail, that the child did not have a real recollection of the event, and that it was a difficult interview – all of which went to the Petitioner's trial strategy of showing that the victim was coached by her mother. Furthermore, even if we found trial counsel's performance deficient on this ground, it is axiomatic that because the child victim's statement was properly admitted through both her mother and Ms. Leahy, the Petitioner cannot overcome his burden of proof as to how the outcome of the trial would have changed in his favor if the statement had not come in through the officer's testimony as well. *See Miller*, 194 W. Va. at 6, 459 S.E.2d at 117, Syl. Pt. 5.

The Petitioner next argues that his trial counsel erred in failing to "properly object to . . . [the victim's] statement being entered into evidence through forensic nurse,

27

Cynthia Leahy, and . . . [the victim's mother] where the State failed to properly lay a foundation for [the] medical exception to the hearsay rule and where the unavailability motion was not made until the day of trial." A review of the record demonstrates that the Petitioner's trial counsel objected to the State's motion to find the victim unavailable and to allow the victim's statement to be admitted through other witnesses on the grounds that it violated his client's right to confront witnesses. The standard by which we review whether a trial counsel's performance was so ineffective as to warrant relief in habeas is not simply that the Petitioner's current appellate counsel would have done things differently. That the Petitioner's trial counsel objected to the evidence in the manner he did is well within the standard of an effective counsel's performance and we find no error in the circuit court's denial of habeas relief on this ground.

The Petitioner next complains that his trial counsel failed to disclose his expert, Dr. Krieg, until the day of trial. In a three-sentence paragraph, the Petitioner argues that "[h]ad trial counsel disclosed Dr. Krieg's report in a timely manner, a more full *Daubert* hearing may have been able to be held prior to the trial and Dr. Krieg's testimony may have been found to be admissible." The Petitioner further argues that had the *Daubert* hearing been held at an earlier time, his trial counsel "would have been able to plan and adjust his argument and presentation accordingly." First, as previously mentioned, contrary to the Petitioner's argument, his trial counsel did disclose Dr. Krieg as an expert prior to trial. The

28

Petitioner, however, had not provided the State with a copy of Dr. Krieg's report prior to trial. It is significant that the State did not object to the late disclosure of Dr. Krieg's report. Moreover, there was no exclusion of any portion of the report due to late disclosure. Rather, the State challenged the scientific testing or methodology that Dr. Krieg used in order to reach the opinion that the Petitioner did not fit the profile of a sex offender. On that issue, the trial court conducted a *Daubert* hearing and determined that Dr. Krieg's own report lacked any scientific basis for his opinion. The Petitioner failed to offer any argument either before the circuit court or this Court regarding any prejudice from the late disclosure of the report, which is the claimed ineffectiveness of counsel, other than an earlier hearing "may" have resulted in a different ruling on admissibility. Additionally, the Petitioner fails to even assert that the outcome of his trial would have been different had the late disclosure not occurred. *See Miller*, 194 W. Va. at 6, 459 S.E.2d at 117, Syl. Pt. 5. Thus, the circuit court did not err in finding that it could grant no relief in habeas on this issue.

Lastly, we find no merit in the Petitioner's argument that his trial counsel failed to object to the testimony of the State's expert, Chanin Kennedy, concerning Ms. Kennedy's diagnosis that the child victim was a sexually abused child and that the child victim did not appear to be coached.[17] Citing *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123

---

[17]Regarding the expert's testimony that the victim was not a suggestible child, the circuit court found that

(continued...)

(1990), the Petitioner conceded before the circuit court that "the West Virginia Supreme Court has allowed the use of expert testimony on whether a child has been sexually-abused." However, the Petitioner argued that "such testimony is not reliable, not scientific, and unfairly prejudicial."[18] Given the Petitioner's concession before the circuit court, we would be hard-pressed to find his trial counsel deficient for failing to make an objection that has no legal basis in the law of this State. This Court held in syllabus point seven of *Edward Charles L.*, that

> [e]xpert psychological testimony is permissible in cases involving incidents of child sexual abuse and an expert may state an opinion as to whether the child comports with the psychological and behavioral profile of a child sexual abuse

---

[17](...continued)
> Petitioner's trial strategy undermined the prior statements of . . . [the victim], calling her suggestibility directly into question. Accordingly, it would have been proper to admit expert testimony supporting the child's credibility. As such, Trial Counsel made a shrewd strategic decision in not objecting to the statement as it would likely have only brought more attention to the testimony. Consequently, this ground only criticizes strategy, which cannot sustain a petition for habeas corpus.

We find no error in this finding by the circuit court.

[18]The Petitioner also assigns as error that his "conviction was based, in part, upon scientifically invalid expert testimony about . . . [the victim] being diagnosed as a sexually-abused child." The Petitioner argues that while this Court allows the introduction of this type of expert testimony, the Petitioner invites the Court to overturn this precedent. *See Edward Charles L.*, 183 W. Va. at 644, 398 S.E.2d at 126, Syl. Pt. 5; *see also State v. James B.*, 204 W. Va. 48, 511 S.E.2d 459 (1998); Syl. Pt. 3, *State v. Wood*, 194 W. Va. 525, 460 S.E.2d 771 (1995). The circuit court found that "[t]he law is well settled in this State[] that this type of evidence is permissible." We agree and decline the Petitioner's invitation to revisit our law on this issue.

victim, and may offer an opinion based on objective findings that the child has been sexually abused. Such an expert may not give an opinion as to whether he personally believes the child, nor an opinion as to whether the sexual assault was committed by the defendant, as these would improperly and prejudicially invade the province of the jury.

183 W. Va. at 644, 398 S.E.2d at 126, Syl. Pt. 5. Our review of the record confirms the circuit court's determination that "[a]ll the testimony that Petitioner complains of falls squarely within the protected confines" of the *Edward Charles L.* decision. Finding no merit to the Petitioner's argument on this issue, the circuit court did not err in denying habeas relief.

The constant theme throughout each of the Petitioner's ineffective assistance of counsel claims was that due to his trial counsel's traumatic brain injury that caused "cognitive difficulties" his trial counsel was so ineffective that "there is a reasonable probability that a jury would have acquitted . . . [the Petitioner]" but for his trial counsel's performance. The Petitioner over and over again tries to paint a picture of his trial counsel being so confused and mentally inept due to his traumatic brain injury that he was wholly deficient in his representation of the Petitioner. Despite the Petitioner's assertion, it is significant that at the close of this trial, after the jury had been excused to deliberate, Judge Gina Groh, who presided over the trial before her appointment to the United States District Court for the Northern District of West Virginia, stated on the record to both the prosecutor and the Petitioner's counsel: "*I want to compliment you all on your professionalism, and I think this case can go either way due to the good efforts put in by both the state and the*

31

*defense counsel. I think you both did an excellent job.*" (Emphasis added). Our review of the record comports with the trial court's observations. That is not to say that every part of the trial below was absolutely perfect; but, as we acknowledged in *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995), with "the reality of the human fallibility of the participants, there can be no such thing as an error-free, perfect trial, and that the Constitution does not guarantee such a trial." *Id.* at 684, 461 S.E.2d at 190 (quoting, in part, *U.S. v. Hasting*, 461 U.S. at 508–09 (1983)).[19]

## IV. Conclusion

Based upon the foregoing, the decision of the Circuit Court of Morgan County

---

[19]The Petitioner also assigns as error that the circuit court failed to grant leave for discovery regarding the forensic testing performed by the State. According to the circuit court, the "Petitioner request[ed] that this Court should order the disclosure of any documentation of the testing performed on the biological sample related to the identification of semen and order the post-conviction testing of the remaining forensic evidence that was not consumed during testing." The circuit court correctly denied this request. The Petitioner had the opportunity to review results of testing done by the State, to obtain his own expert and to cross-examine the State's experts. As the Petitioner acknowledges in his brief, his trial counsel, with the Petitioner's agreement, waived the right to independent testing. Consequently, under Rule 7 of the Rules Governing Post-Conviction Habeas Corpus in West Virginia, the Petitioner has failed to meet the "good cause" requirement that must have been met in order for the circuit court to have exercised its discretion in allowing the Petitioner to engage in discovery as allowed by the rule. *See id.* ("In post-conviction habeas corpus proceedings, a prisoner may invoke the processes of discovery available under the West Virginia Rules of Civil Procedure if, and to the extent that, the court in the exercise of its discretion, and for good cause shown, grants leave to do so."). We find no error by the circuit court regarding this issue.

is affirmed.

Affirmed.