# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Joshua J.,**
**Petitioner Below, Petitioner**

**FILED**

**March 12, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.)  No. 17-0129** (Randolph County 14-C-189)

**Ralph Terry, Acting Warden,**
**Mt. Olive Correctional Complex,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner Joshua J., by counsel Gregory R. Tingler, appeals the Circuit Court of Randolph County's January 12, 2017, order denying his amended petition for writ of habeas corpus.[1] Respondent Ralph Terry, Acting Warden of Mt. Olive Correctional Complex, by counsel Gordon L. Mowen II, filed a response.[2] On appeal, petitioner argues that the circuit court erred in denying his amended petition for writ of habeas corpus without affording him an evidentiary hearing on his ineffective assistance of counsel claim.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On June 25, 2012, petitioner was indicted on three counts of second-degree sexual assault. Petitioner entered into a plea agreement with the State whereby he agreed to plead guilty to two counts of second-degree sexual assault in exchange for dismissal of the third count in the

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

[2]Since the filing of the petition in this case, the warden at Mt. Olive Correctional Complex has changed, and the acting warden is now Ralph Terry. The Court has made the necessary substitution of parties pursuant to Rule 41(c) of the West Virginia Rules of Appellate Procedure.

indictment and the State's agreement to forgo transferring pending juvenile charges to adult jurisdiction. On August 6, 2012, the circuit court held a plea hearing and accepted petitioner's plea. On October 24, 2012, petitioner was sentenced to consecutive indeterminate terms of not less than ten nor more than twenty-five years for each second-degree sexual assault conviction.

Petitioner did not file a direct appeal of his convictions; however, he moved for reconsideration of his sentence on numerous occasions in 2012, 2013, and 2014. At least three such motions were filed by his trial counsel, including one following a March 1, 2013, letter from petitioner to the circuit court requesting appointment of new counsel. In this letter, petitioner stated that his attorney was unresponsive, failed to do certain things he requested, and was "being a hindrance to [his] case." The circuit court denied petitioner's request. In 2014, petitioner began filing pro se motions for reconsideration of sentence, which the circuit court denied.

On November 19, 2014, petitioner filed a pro se petition for writ of habeas corpus. Petitioner was appointed counsel, and on August 2, 2016, he filed an amended petition asserting ineffective assistance of counsel, invalid plea agreement and guilty plea, coerced plea agreement, and failure to Mirandize and coercion. Without conducting an evidentiary hearing, the circuit court denied petitioner's amended petition by order entered on January 12, 2017. It is from this order that petitioner appeals.

This Court reviews appeals of circuit court orders denying habeas corpus relief under the following standard:

> "In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syllabus point 1, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006).

Syl. Pt. 1, *State ex rel. Franklin v. McBride*, 226 W.Va. 375, 701 S.E.2d 97 (2009).

On appeal, petitioner contends that the circuit court erred in not holding an evidentiary hearing on his ineffective assistance of counsel claim. As detailed in his March 1, 2013, letter requesting the appointment of new counsel, petitioner argues that he only met with his attorney a few times outside of court appearances, counsel did not explain his case and options to allow him to make an informed decision, and counsel did not return calls or "do certain things that were asked of him." Petitioner also alleges that his "borderline range of intelligence" renders the answers given at his plea hearing "suspect because they may have been the equivalent of a young student trying to get out of trouble after being called to the principal's office." Finally, petitioner takes exception to the circuit court's citation of the plea hearing transcript because the transcript "does nothing to reveal the content of any communications between [p]etitioner and his trial counsel prior to the plea hearing." Petitioner contends that his trial counsel told him he "would never see the light of day again" if he did not accept the State's plea offer.

To begin, petitioner cites no law mandating that an evidentiary hearing be held when certain claims are pled. Instead, as petitioner acknowledges, evidentiary hearings are not proper in every case:

> [a] court having jurisdiction over habeas corpus proceedings may deny a petition for a writ of habeas corpus without a hearing and without appointing counsel for the petitioner if the petition, exhibits, affidavits or other documentary evidence filed therewith show to such court's satisfaction that the petitioner is entitled to no relief.

Syl. Pt. 1, *Perdue v. Coiner*, 156 W.Va. 467, 194 S.E.2d 657 (1973). The decision to hold a hearing rests in the "sound discretion" of the circuit court. *Tex S. v. Pszczolkowski*, 236 W.Va. 245, 253, 778 S.E.2d 694, 702 (2015) (citation omitted). Although petitioner urges this Court to conclude that he was entitled to a hearing as we found in *State ex rel. Nazelrod v. Hun*, 199 W.Va. 582, 486 S.E.2d 322 (1997), our decision in that case was predicated on the finding that "[a]n examination of the ineffective assistance of counsel claim requires an examination of facts not developed in the appellant's trial transcript." *Id.* at 584, 486 S.E.2d at 324. As discussed below, the allegations underpinning petitioner's ineffective assistance of counsel claims are adequately developed in his plea hearing transcript. For these reasons, we find no abuse of discretion in the circuit court's failure to hold an omnibus hearing.

Claims of ineffective assistance of counsel

> are to be governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

Syl. Pt. 5, in part, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995). A claim may be disposed of for failure to meet either prong of the test. Syl. Pt. 5, in part, *State ex rel. Daniel v. Legursky*, 195 W.Va. 314, 465 S.E.2d 416 (1995). "Failure to meet the burden of proof imposed by either part of the *Strickland/Miller* test is fatal to a habeas petitioner's claim." *State ex rel. Vernatter v. Warden, W.Va. Penitentiary*, 207 W.Va. 11, 17, 528 S.E.2d 207, 213 (1999) (citation omitted).

Furthermore, in *Call v. McKenzie*, 159 W.Va. 191, 220 S.E.2d 665 (1975), we observed that "[t]he most common issues in [h]abeas corpus cases are whether there were, indeed, knowing and intelligent waivers, whether there were facts outside the record which improperly caused the defendant to enter his plea, and whether defendant's counsel was indeed competent." *Id.* at 196, 220 S.E.2d at 669-70. We found that these issues "can all be finally resolved in the careful taking of the original plea" and outlined certain inquiries that should be made prior to the acceptance of a plea. *Id.* at 196, 220 S.E.2d at 670. Where a plea bargain has been entered into, "the trial court should spread the terms of the bargain upon the record and interrogate the defendant concerning whether he understands the rights he is waiving by pleading guilty and whether there is any pressure upon him to plead guilty other than the consideration admitted on the record." *Id.* at 191, 220 S.E.2d at 667, Syl. Pt. 4. Additionally,

[a] trial court should spread upon the record the defendant's education, whether he consulted with friends or relatives about his plea, any history of mental illness or drug use, the extent he consulted with counsel, and all other relevant matters which will demonstrate to an appellate court or a trial court proceeding in [h]abeas corpus that the defendant's plea was knowingly and intelligently made with due regard to the intelligent waiver of known rights.

*Id.* at 192, 220 S.E.2d at 668, Syl. Pt. 5.

At petitioner's plea hearing, the circuit court began by asking petitioner whether there was "anything about the proceeding that you don't understand." Petitioner replied, "No, ma'am." Petitioner stated that he could read and write and had obtained a tenth-grade education. Petitioner further stated that he had read the plea agreement before he signed it and understood its contents. To this end, the following exchange ensued:

Q:     Okay. So today is a Monday, so that means you've had six days to think about it?

A:     Yes, ma'am.

Q:     Do you feel like you've had enough time to think about it?

A:     Yes, ma'am.

Petitioner also offered the following testimony concerning his attorney's role in explaining the plea agreement:

Q:     Did you have an opportunity to ask [trial counsel] any questions before you signed [the plea agreement]?

A:     Yes, ma'am.

Q:     And did he answer all of your questions that you have on the document before you signed it?

A:     Yes.

. . .

Q:     Okay. Did [trial counsel] read the document to you?

A:     Yes, ma'am.

Q:     Okay. Did he read it bit by bit to you?

4

A:      Yeah.

Q:      Read the whole thing to you?

A:      Yes.

Q:      Okay. So you feel like you understand it?

A:      Yes.

After taking a fifteen to twenty minute recess to further discuss the plea agreement with his family and attorney, petitioner returned to the courtroom and announced that he wished to "[g]o forward with [the plea agreement]."

Concerning his trial counsel, petitioner testified as follows:

Q:      Okay. And you and your attorney have talked about this case several times prior to today; is that correct?

A:      Yes, ma'am.

. . .

Q:      Okay.

        [Petitioner], are you satisfied with the legal services provided by your attorney?

A:      Yes, ma'am.

Q:      Do you believe that he's acted in your best interest throughout his representation?

A:      Yes, ma'am.

Q:      Has [trial counsel] done everything you've asked him to do?

A:      Yes, ma'am.

Q:      Anything that he did that you didn't want him to do?

A:      No, ma'am.

Q:      Do you feel like he's made himself available to meet with you plenty of times?

A:    Yes, ma'am.

Q:    Okay. And do you understand that – I should ask. Do you have any complaints about [trial counsel] whatsoever at this time?

A:    No, ma'am.

Petitioner's trial counsel also offered testimony:

[Q]:    Mr. Hall [trial counsel], about how many times have you met with your client to discuss this case?

[A]:    All totaled from the time of the original charge, which for the [c]ourt's information, it was a little – the original charge on him had the wrong years and the ages didn't work out for – I think he was charged originally with first degree sexual assault. We got it dismissed in magistrate court. However, the prosecution brought a new criminal complaint in magistrate court before he ever even got back to the regional jail to check out.

So I would say all total, we have probably met ten times between visits to the jail, meetings in magistrate court, that sort of thing.

[Q]:    Have you discussed with him the nature of the charges, all possible defenses, and the constitutional rights that he'll be giving up if he pleads guilty today?

[A]:    Yes, I have, your Honor.

[Q]:    Do you believe there would be any benefit to [petitioner] proceeding to trial?

[A]:    No, your Honor. . . . And I think with all of that out there, with the disclosures and his confession, I think this is by far in his best interest.

Petitioner did not dispute this testimony at the hearing.

The circuit court proceeded to explain petitioner's right to trial and the potential that a jury could return a not guilty verdict or a guilty verdict to a lesser included offense. Petitioner indicated that he understood those possibilities, but that trial was not a risk he was willing to take. The circuit court nonetheless further instructed him on his right to a jury and that, prior to a guilty verdict, all twelve jurors would need to find his guilt unanimously. He was instructed on the burden of proof, his right to testify, his right to call witnesses, and various other rights attendant to proceeding to trial. Petitioner stated that he understood these rights and was waiving them by entering into the plea agreement. The circuit court also informed petitioner that he could

6

plead not guilty. Again, petitioner demonstrated an understanding of these rights and options, but he testified that he wished to enter into the plea agreement, had no questions for the circuit court, and had no questions for his attorney. After the circuit court concluded explaining petitioner's rights, it asked,

> Q:     You're absolutely certain you want to plead guilty?
>
> A:     Yes, ma'am.
>
> Q:     You're absolutely certain you want to give up your right to a trial on these charges and all of the rights that I have explained to you?
>
> A:     Yes, ma'am.
>
> Q:     Do you feel like this is in your best interest?
>
> A:     Yes, ma'am.
>
> Q:     Do you need any more time to think about this at all?
>
> A:     No, ma'am.
>
> Q:     And you're sure you don't want to change your mind?
>
> A:     Yes, ma'am.

The preceding plea hearing excerpts support the trial court's denial of petitioner's amended petition. These excerpts reveal that petitioner was adequately apprised of his options and the effects of his choice to enter into the plea agreement, and that he was not confused by or hesitant to enter the plea agreement. Importantly, petitioner does not assert that he did not wish to enter into the plea agreement, thereby failing to establish that the proceedings below would have been different even if petitioner could establish that he was not properly informed of the plea agreement or the consequences of entering into it.

Petitioner also testified to his satisfaction with counsel's representation. Although petitioner argues that he brought his dissatisfaction with counsel's representation to the circuit court's attention, he did so nearly five months after his plea hearing and after counsel had filed several motions on petitioner's behalf to reduce his sentence. Assuming that trial counsel, in fact, had become unresponsive to petitioner, petitioner fails to outline what more trial counsel could have done.[3] Accordingly, we find no error in the circuit court's conclusion that denial was warranted because petitioner's petition and records showed that he was entitled to no relief.

For the foregoing reasons, we affirm the circuit court's January 12, 2017, order denying petitioner's amended petition for writ of habeas corpus.

---

[3]There is no evidence that petitioner wanted counsel to file a direct appeal on his behalf.

7

Affirmed.

**ISSUED:** March 12, 2018

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Allen H. Loughry II
Justice Elizabeth D. Walker

8