## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**FILED**

**June 15, 2016**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**Wade Painter,**
**Petitioner**

**vs) No. 15-0540** (Berkeley County 09-C-573)

**David Ballard, Warden, Mount Olive Correctional Complex,**
**Respondent**

### MEMORANDUM DECISION

Petitioner Wade Painter, by counsel Ben J. Crawley-Woods, appeals the orders of the Circuit Court of Berkeley County, entered on December 16, 2014 and May 8, 2015, denying his petition for writ of habeas corpus. Respondent David Ballard, the warden of Mount Olive Correctional Complex ("the State"),[1] by counsel Christopher C. Quasebarth, filed a response.

This Court has considered the parties' briefs, oral arguments, and the record on appeal. This case satisfies the "limited circumstances" requirement of Rule 21(d) of the Rules of Appellate Procedure and is appropriate for a memorandum decision rather than an opinion. For the reasons expressed below, we reverse the December 16, 2014, order, remanding the case with directions. We affirm the May 8, 2015, order.

### I. Factual and Procedural Background

On September 14, 2005, Raymond White, Jr. and his son, Raymond White, IV, were found dead in their home in Berkeley County, West Virginia. Both men had been shot. Upon investigating the scene, the police discovered that personal property had been stolen from the home. On or about September 14, 2005, property was stolen from two other homes in the area.

The record reflects that William Barrett, a friend of the Whites, arrived at the Whites' home on September 14, 2005, at about 3:45 p.m. and found it in a state he considered unusual: There was a note on the house that said the victims were out of town,

---

[1] To the extent that respondent David Ballard, in his capacity as the warden of Mount Olive Correctional Complex, is represented by the Berkeley County Prosecuting Attorney's office, we will hereinafter refer to Mr. Ballard as "the State."

1

blankets and curtains covered the windows, the sliding glass door at the back of the house was open, and items belonging to the victims were strewn about the back yard. Upon looking in the house, Mr. Barrett noticed more of the victims' belongings in the floor of the home, including plants that had been knocked over. Mr. Barrett called a friend, Alec Hall, out of concern that his friends, the Whites, had been robbed or that the Whites had been involved in a fight. At Mr. Hall's direction, Mr. Barrett drove to Mr. Hall's house. Then Mr. Barrett, Mr. Hall, Bradford Hall, and Lori Love all drove back to the White residence. It was then that they discovered the bodies and called the police.

Upon investigating the deaths, the police learned that a Mazda MX-6 and other items were missing from the home. At about 8:30 a.m. on September 15, 2005, police located the Mazda MX-6, which had been abandoned behind a garage. Later that morning, upon reading about the killings and the missing vehicle in the newspaper, John Beitzel contacted the police and informed them that he witnessed the tenant of one of his rental properties in possession of a car matching the description of the stolen Mazda MX-6. That tenant, Wade Painter, lived together with his girlfriend, Angela Conner, in the rental property.

After speaking with Mr. Beitzel, Corporal Brendon Hall and Sergeant Ted Snyder drove to Mr. Painter's residence to question him about the Mazda MX-6 at approximately 11:30 a.m. According to the officers, Mr. Painter refused to admit them to his home; however, Mr. Painter agreed to speak with them outside the home. Ms. Conner was home at the time and aware that Mr. Painter had refused to allow police to enter the residence. A short while after conversing with the officers, Mr. Painter willingly accompanied the officers in their unmarked vehicle to the police station to answer further questions.

After Mr. Painter left with the officers, Ms. Conner contacted her father, Monte Conner, and told him that Mr. Painter was with the police and that her home was full of property she did not believe belonged to Mr. Painter. On his daughter's behalf, Mr. Conner called his neighbor, Captain Dennis Streets. Mr. Conner relayed his daughter's concerns to Cpt. Streets, and informed Cpt. Streets that Ms. Conner would allow the police to search her residence.

Cpt. Streets drove to the home, and Ms. Conner gave him permission to enter. The entry of the residence was premised on Ms. Conner's permission; no search warrant was ever obtained to search the residence. With the help of other officers, Cpt. Streets collected and photographed the property Ms. Conner identified as not belonging to her or Mr. Painter. Among other things, the officers found a red duffle bag with items appearing to have blood on them and a dog tag bearing the name of one of the Whites. Cpt. Streets then called Cpl. Hall, who was interrogating Mr. Painter at the police station, and informed Cpl. Hall of his findings. Mr. Painter was placed under arrested.

2

For the death of the Whites, and the looting of the Whites' home and the two other homes, petitioner Wade Painter was indicted on one count of Daytime Burglary by Entering without Breaking, one count of Grand Larceny, one count of Daytime Burglary by Breaking and Entering, one count of Petit Larceny, two counts of First Degree Murder, and one count of Possession of a Stolen Vehicle. Following a five-day jury trial, Mr. Painter was convicted and sentenced on all counts. He did not receive a recommendation of mercy on the murder convictions, and he received two life without mercy sentences for the two murder convictions.

Mr. Painter filed a motion requesting a new trial and a motion for judgment of acquittal notwithstanding the verdict, arguing that the fruits of the search of his home should have been suppressed, that the statement he gave to a particular police officer after invoking his right to counsel should have been suppressed, and that he was entitled to a directed verdict. These motions were denied. Mr. Painter appealed his conviction to this Court, asserting the same three arguments he raised in his post-trial motions. By order dated February 3, 2009, the Court refused Mr. Painter's direct appeal.

Through counsel, Mr. Painter filed an amended petition for habeas corpus in the Circuit Court of Berkeley County (hereinafter "habeas court"), raising the following eight contentions: (1) that he was subjected to an illegal seizure and arrest at his home on September 15, 2005, and that his trial and appellate counsel were ineffective by failing to challenge the same; (2) that his trial and appellate counsel failed to investigate, raise, and assert that the seizure of property from his home without a warrant was illegal; (3) that his trial and appellate counsel failed to investigate, raise, and assert that his prompt presentment right was violated; (4) that he was denied a fair trial by the State's improper admission of evidence, and that his trial and appellate counsel were ineffective by failing to challenge the admission of the evidence; (5) that he was denied a fair trial as a result of the prosecutor and the trial judge's improper remarks during closing arguments, and that his appellate counsel was ineffective by failing to challenge the same on appeal; (6) that he was denied a fair trial as a result of the State's failure to collect, test, and/or disclose potentially exculpatory evidence, and that the failure of his trial and appellate counsel to challenge this behavior below constituted ineffective assistance of counsel; (7) that his assignments of error raised in his direct appeal entitle him to relief; and (8) that the cumulative weight of the errors within his trial warrant granting a new trial.[2] The habeas

---

[2] Mr. Painter's habeas corpus petition raised a ninth contention, in which he argued that money he is ordered to pay in restitution is being wrongfully deducted from his inmate account. On the same day that Mr. Painter filed his petition for writ of habeas corpus, May 23, 2014, he also filed a Motion to Amend Order of Restitution Payments *pro se*. The court denied that motion by order entered on May 28, 2014, and accordingly refused to further address the issue in the December 16, 2014, order. Mr. Painter's restitution issue was appealed to this Court separately from claims at issue here.

3

court summarily dismissed all but the second contention in a December 16, 2014, order without requiring the State to respond to Mr. Painter's petition.

The court ordered the State to file an answer to the petition on the second contention presented therein. After receiving the State's answer, the court dismissed the second contention in a May 8, 2015, order without having previously held an evidentiary hearing.

## II. Discussion

Mr. Painter now appeals the denial of his habeas corpus petition to this Court. In his two assignments of error, he argues that the habeas court committed reversible error by summarily denying all but his second contention in its December 16, 2014, order, and that the habeas court committed reversible error by denying his second contention in its May 8, 2015, order. We therefore have before us on appeal two orders from the habeas court. Our standard of review in cases involving the denial of a habeas corpus petition is as follows:

> In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to *de novo* review.

Syl. pt. 1, *Mathena v. Haines*, 219 W. Va. 417, 633 S.E.2d 771 (2006).

### A. The December 16, 2014, Order

Many of the contentions summarily dismissed in the December 16, 2014, order contained an ineffective assistance of trial and/or counsel allegation. In *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995), we held:

> In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

Syl. pt. 5, *id.* The habeas court, in summarily dismissing some of Mr. Painter's ineffective assistance of counsel claims, attributed Mr. Painter's trial counsel and appellate counsel's conduct to "strategy." In so doing, the habeas court determined that Mr. Painter's trial and appellate counsel's performance did not satisfy the first prong of

4

the *Strickland* test. The habeas court dismissed these allegations without having received a response from the State.

We find that an attorney's strategy is rarely obvious from the trial or appellate record. To establish counsel's strategy in a habeas corpus proceeding, an evidentiary hearing is usually necessary to provide counsel with "the opportunity to explain the motive and reason behind his or her trial behavior." *Miller*, 194 W. Va. 3, 15, 459 S.E.2d 114, 126. In most circumstances, when no evidentiary hearing has been held, conclusions drawn regarding strategy are nothing more than mere speculation. *But see Tex S. v. Pszczolkowski*, 236 W. Va. 245, 778 S.E.2d 694 (2015) (permitting dismissal without an evidentiary hearing where counsel was deceased).

In this appeal, we find that the record before us is silent as to Mr. Painter's trial or appellate counsel's strategy. With no factual support for its conclusions regarding strategy, the habeas court committed reversible error by making decisions based on speculation. We therefore reverse the December 16, 2014, order and remand this case for the court to conduct an evidentiary hearing to examine Mr. Painter's ineffective assistance of counsel claims. *See* W. Va. Code § 53-4A-7(a) (providing for an evidentiary hearing in which the court can "take evidence on the contention or contentions and grounds (in fact or law) advanced"). We also direct the habeas court on remand to order the State to file an answer to Mr. Painter's petition for writ of habeas corpus in accordance with Rule 4(d) of the *Rules Governing Post-Conviction Habeas Corpus Proceedings in West Virginia*.

*B. The May 8, 2015, Order*

On one of Mr. Painter's contentions, however, the State did file an answer. This contention was considered in the habeas court's ruling of May 8, 2015, and involved Mr. Painter's claim that his trial and appellate counsel were ineffective by failing to investigate, raise, and assert that the seizure of a bags found in his home was unconstitutional.[3] The circuit court, in dismissing this claim without holding an evidentiary hearing, determined that because Mr. Painter did not establish that the seizure of the bags was unconstitutional, he could not establish that his trial and appellate counsel were ineffective.

As we established *supra*, ineffective assistance of counsel claims are evaluated using the *Strickland* test. *See* syl. pt. 5, *Miller*, 194 W. Va. 3, 459 S.E.2d 114. The second prong of the test involves an evaluation of the prejudice caused by counsel's conduct. In

---

[3] Mr. Painter alleged that the seizure violated his Fourth Amendment rights. The Fourth Amendment to the United States Constitution provides, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ."

this case, if there is no merit to Mr. Painter's contention that the seizure of the bags was unconstitutional, then Mr. Painter's ineffective assistance of counsel claims must fail inasmuch as he would not be able to satisfy the prejudice prong of the *Strickland* test.

We determine that the circuit court correctly concluded that there was no merit to Mr. Painter's contention that the seizure of the bags was unconstitutional. The search leading to the seizure of the bags is similar to the search and seizure sanctioned by the United States Supreme Court in *Fernandez v. California*, ___ U.S. ___, 134 S. Ct. 1126 (2014). In *Fernandez*, police officers, while investigating an assault, arrived at the home of the defendant and his girlfriend, and knocked on the door. *Id.* at 1130. After the girlfriend answered the door, the defendant "stepped forward and said, 'You don't have any right to come in here. I know my rights.'" *Id.* (internal quotation marks omitted). "Suspecting that [the defendant] had assaulted [his girlfriend], the officers removed him from the apartment and then placed him under arrest." *Id.* He was taken to the police station for booking. *Id.* About an hour after the defendant was arrested, the police returned to the home and asked the girlfriend for permission to enter. *Id.* The girlfriend gave oral and written consent for the police to enter and search. *Id.* During the search, police found evidence that was later used against the defendant, over his objection, during his criminal trial. *Id.* at 1130–31.

On appeal, the defendant argued that this evidence should have been suppressed under *Georgia v. Randolph*, 547 U.S. 103 (2006). *Fernandez*, 134 S. Ct. at 1131. In *Randolph*, the U.S. Supreme Court held that where co-occupants of a residence are both present and one objects to a search while the other consents, the consent of one occupant is insufficient to allow police to conduct a search. *Id.* at 106. The *Fernandez* court distinguished the case before it from *Randolph*, stating, "Our opinion in *Randolph* took great pains to emphasize that its holding was limited to situations in which the objecting occupant is physically present." *Fernandez*, 134 S. Ct. at 1130. The U.S. Supreme Court *rejected* the defendant's argument that "his objection, made at the threshold of the premises that the police wanted to search, remained effective until he changed his mind and withdrew his objection." *Id.* at 1135. The U.S. Supreme Court refused to extend *Randolph* in *Fernandez*, holding that "where consent was provided by an abused woman well after her male partner had been removed from the apartment they shared," the search and seizure did not violate the Fourth Amendment. *Id.* at 1130.

In this case, Mr. Painter denied police access to a home in which he cohabitated with Ms. Conner. After he left the home, however, Ms. Conner's father contacted the police on her behalf and requested that they enter into and search the residence. Pursuant to *Fernandez*, Ms. Conner had the authority to consent to the search of her home. Therefore, the searches and seizures were constitutional. Because there is no merit to the contention that the seizure of the bags was unconstitutional, Mr. Painter has failed to establish that his trial and appellate counsel were ineffective with regard to this specific issue.

## III. Conclusion

In conclusion, we reverse the habeas court's December 16, 2014, order. We remand for the habeas court to order the State to file an answer to Mr. Painter's habeas corpus petition and for the habeas court to hold an evidentiary hearing to take evidence in on Mr. Painter's ineffective assistance of counsel claims. Because we find no error in the habeas court's decision in its May 8, 2015, order, we affirm that order.

Affirmed in part, reversed in part, and remanded with directions.

**ISSUED:** June 15, 2016

**CONCURRED IN BY:**

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin

**CONCURRING IN PART AND DISSENTING IN PART:**

Justice Margaret L. Workman
Justice Allen H. Loughry II

Workman, J., joined by Loughry, J., concurring in part and dissenting in part:

I concur in the majority's affirmance of the May 8, 2015, order regarding the seizure of the bags found in petitioner's home. I likewise concur in the majority's reversal and remand for an evidentiary hearing with regard to petitioner's ineffective assistance of counsel claims associated with purportedly inadmissible Rule 404(b) evidence and improper prosecutorial remarks. To the extent, however, that the majority opinion purports to remand on the entirety of petitioner's ineffective assistance of counsel claims, I respectfully dissent. With respect to all but the Rule 404(b) and prosecutorial remarks issues, the lower court properly demonstrated through adequate analysis that such claims were lacking in substantial merit and therefore properly summarily dismissed. With respect to the alleged 404(b) evidentiary errors and prosecutorial remarks, I write separately to more fully articulate the error in the habeas court's handling of these claims and to highlight the majority's failure to fully grasp the limited issue presented, resulting in a remand which is overbroad.

First, to clarify the narrowness of the issue before the Court, petitioner assigned as error 1) the habeas court's substantive ruling on his "fruit of the poisonous

7

tree" contention; and 2) the habeas court's refusal to grant petitioner an evidentiary hearing and require a response from the State, on the remainder of his habeas contentions. The latter assignment of error, then, raises *only* the propriety of the habeas court's *summary* dismissal of his habeas petition.[4] In viewing the propriety of *summary* dismissal of the habeas petitions, we have long held that "[a] court having jurisdiction over habeas corpus proceedings may deny a petition for a writ of habeas corpus without a hearing . . . if the petition, exhibits, affidavits or other documentary evidence filed therewith show to such court's satisfaction that the petitioner is entitled to no relief." Syl. Pt. 1, *Perdue v. Coiner*, 156 W. Va. 467, 194 S.E.2d 657 (1973). I agree wholeheartedly that where a habeas court is able to view the record and demonstrate that a claim lacks substantial merit, it may properly summarily dismiss.

With regard to all but the 404(b) and prosecutorial errors, the habeas court below engaged in analysis of the alleged legal errors giving rise to the ineffective assistance of counsel claims concluding that no error occurred; therefore, no ineffective assistance was rendered.[5] In this regard, the habeas court demonstrated that such claims lacked substantial merit and were therefore appropriate for summary dismissal. The majority fails entirely to acknowledge and address this analysis, broadly remanding for what would appear to be any claim couched in ineffective assistance of counsel, regardless of whether the habeas court has already properly determined that no error occurred. The majority fails to individually examine these habeas contentions to ascertain the sole issue presented—whether the habeas court demonstrated that the claim was sufficiently lacking in merit as to render it susceptible to summary dismissal without a hearing.

In contrast however, with respect to the 404(b) and prosecutorial remarks, the habeas court did not address in any legally sufficient manner whether or not any error occurred in the first instance. Nowhere is there a discussion of Rule 404(b), the exceptions thereto, etc. Rather, the habeas court, unlike its handling of the other contentions, resorted to pure speculation to attempt to demonstrate merely that counsel was not ineffective with respect to this evidence. The habeas court repeatedly referenced

---

[4] Indeed, petitioner does not substantively argue the merits of his underlying habeas contentions, rather, he properly sets forth only enough discussion to argue that there was probable cause for an evidentiary hearing.

[5] Although it is somewhat difficult to discern from the record, it appears some of petitioner's habeas contentions claim both constitutional deprivations warranting habeas relief in and of themselves *and* ineffective assistance of trial and/or appellate counsel claims associated with those deprivations. The majority opinion, in remanding only on the "ineffective assistance of counsel" claims, fails to speak to whether any habeas claims not based on ineffective assistance of counsel were properly summarily dismissed.

the "strategic" nature of trial counsel's failure to object and appellate counsel's failure to appeal a litany of what petitioner claims was inadmissible 404(b) evidence. Having taken no evidence from either trial or appellate counsel, the habeas court provided no basis upon which to conclude that such omissions were due to strategy.[6]  As such, the habeas court's dismissal of these claims was not based on the "petition, exhibits, affidavits or other documentary evidence," and lacked any rational support.[7]  This was unquestionably an insufficient basis upon which to rest a summary dismissal. Therefore, with respect to these claims, reversal and remand is proper and conforms to the contours of the assignment of error placed before this Court.

To whatever extent petitioner seeks to assert that the allegedly improper admission of this evidence itself was tantamount to a constitutional deprivation, *see* n.2, *supra*, he has presented little argument in that regard. Aside from a rote incantation and reference to "due process of law and a fair trial," petitioner makes no attempt to explain how these purported trial errors were so egregious and pervasive such as to contaminate the entire trial.[8]  Therefore, it bears reiteration that "[a] habeas corpus proceeding is not a substitute for a writ of error in that ordinary trial error not involving constitutional violations will not be reviewed." Syl. Pt. 4, *State ex rel. McMannis v. Mohn*, 163 W. Va. 129, 254 S.E.2d 805 (1979). Moreover, evidentiary rulings are almost without exception deemed ordinary trial error; only in the rarest circumstances when such rulings are so egregious as to render the entire trial unfair are they cognizable in habeas. "State court evidentiary rulings respecting the admission of evidence are cognizable in habeas corpus

---

[6] The habeas court's order includes such statements as:

"[A]ppellate counsel may not have found such an argument to be convincing or worth the Supreme Court's time."
"This would not have been a good argument to make on appeal and appellate counsel clearly presented a tailored petition that would give his client the best chance for appeal."
"In this instance, trial counsel strategically chose to make a more effective request [than objecting]."

[7] The habeas court further made such curiously inaccurate statements in its order as "Such a decision is precisely the type of strategy decision that this Court cannot review in a habeas proceeding" and "[T]his Court cannot review the strategy decision of counsel in the instant habeas proceeding." The habeas court also appeared to laboring under a misapprehension that if trial counsel did not object, appellate counsel could not assert error on appeal.

[8] Simply raising the specter of an "unfair trial" via evidentiary errors is insufficient to elevate trial error to one of constitutional dimension. There is scarcely a defendant who would not suggest that any trial error of any degree did not result in "unfairness." It is incumbent upon the courts to distinguish this contention from a constitutional deprivation worthy of habeas consideration.

9

only to the extent they violate specific constitutional provisions or are so egregious as to render the entire trial fundamentally unfair and thereby violate due process under the Fourteenth Amendment." *Hatcher v. McBride*, 221 W. Va. 5, 11, 650 S.E.2d 104, 110 (2006) (citing *Estelle v. McGuire*, 502 U.S. 62, 112 S. Ct. 475, 116 L.Ed.2d 385 (1991)). Moreover, "[a]bsent 'circumstances impugning fundamental fairness or infringing specific constitutional protections,' admissibility of evidence does not present a state or federal constitutional question." *Id*. (quoting *Grundler v. North Carolina*, 283 F.2d 798, 802 (4th Cir.1960)); *see also Hilling v. Nohe*, 2013 WL 3185089, *5 (W. Va. June 24, 2013) (memorandum decision) ("Pre-trial and evidentiary rulings fall within the gambit of ordinary trial error.").

However, to the extent that petitioner's claims of evidentiary error are intended to simply form the foundation of an ineffective assistance of counsel claim, as indicated above, the habeas court engaged in no legal analysis of whether such evidence was even error as it did with the other claims. More importantly, it took no testimony regarding trial or appellate counsel's handling of the purported trial errors, speculating wildly about why counsel did or did not object or appeal. Much as this Court has repeatedly noted that ineffective assistance of counsel claims are not reviewable upon direct appeal, it would be the rare circumstance when the habeas court could make such conclusions based upon the bare trial record. *See State v. Miller*, 194 W. Va. 3, 14-15, 459 S.E.2d 114, 125-26 (1995) ("In cases involving ineffective assistance on direct appeals, intelligent review is rendered impossible because the most significant witness, the trial attorney, has not been given the opportunity to explain the motive and reason behind his or her trial behavior.").

Therefore, I concur in the majority's reversal and remand for a hearing on the ineffective assistance of counsel claims based upon the admission of allegedly improper 404(b) evidence and prosecutorial remarks. Reversal and remand in this instance is proper because, within the confines of the issue on appeal, the habeas court failed to demonstrate that such claims were lacking in merit and therefore proper for summary dismissal. However, with respect to the remaining habeas claims to which ineffective assistance of counsel was attached, the habeas court properly demonstrated in its order that such claims lacked merit and were susceptible to summary dismissal. Accordingly, I respectfully concur in part and dissent in part.

10