# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Nathan S.,**
**Petitioner Below, Petitioner**

**FILED**

**March 23, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.)  No. 17-1083** (Berkeley County CC-02-2015-C-65)

**Tom Harlan, Interim Superintendent,**
**Huttonsville Correctional Center,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner Nathan S., by counsel Patrick Kratovil, appeals the November 13, 2017, order of the Circuit Court of Berkeley County that denied his petition for post-conviction habeas corpus relief. Interim Superintendent Tom Harlan,[1] by counsel Shannon Frederick Kiser, filed a summary response. On appeal, petitioner argues that the circuit court erred by failing to conduct an evidentiary hearing on his habeas petition, and by denying his claim of ineffective assistance of trial and appellate counsel.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In 2010, petitioner was indicted on thirteen counts of child abuse by a parent, guardian, or custodian causing injury under West Virginia Code § 61-8D-3(a).[2] The alleged victims were one

---

[1] When petitioner filed this case, Michael Martin was the Superintendent of the Huttonsville Correctional Center. However, Tom Harlan is now the Interim Superintendent of that Center. The Court has made the necessary substitution of parties pursuant to Rule 41(c) of the West Virginia Rules of Appellate Procedure.

[2] Petitioner's indictment alleged that between September of 2008 and April of 2009, petitioner: (1) punched K.F., a minor, in the side (Count One) and burned her with a cigarette (Count Two); (2) shot C.F., a minor, with a BB gun (Count Three), burned him with a cigarette (Count Four), and punched him in the arm (Count Five); (3) shot A.F., a minor, with a BB gun (Count Six), choked him (Count Seven), shot him with a bottle rocket (Count Eight), and struck him with a metal spoon causing bleeding (Count Nine); (4) burned I.F., a minor, with a cigarette

of petitioner's children and four of his wife's children. In 2013, the matter proceeded to an eleven-day trial.[3] At the close of the State's case-in-chief, petitioner moved for a judgment of acquittal on all but Count Ten of the indictment (alleging petitioner burned I.F. with a cigarette). Although the trial court noted, "I know there is a whole lot of conflicting testimony. There's a lot of inconsistent testimony," it denied petitioner's motion. At the close of petitioner's case-in-chief, he renewed his motion for a judgment of acquittal. The trial court replied: "I'm going to deny the motions at this time. I recognize that there's very conflicting evidence, and there's no evidence, virtually, of any kind of testimony other than the children, however, their testimony is evidence, and to that extent I agree with the State." Ultimately, the jury found petitioner guilty on four counts: (1) punching K.F. in the side (Count One); (2) choking A.F. (Count Seven); (3) choking I.F. (Count Eleven); and (4) striking H.S. with a metal spoon on the leg (Count Twelve).

Following trial, the State filed a recidivist information against petitioner alleging he was previously convicted of two qualifying felony offenses, both of which were driving under the influence, third offense. The circuit court found petitioner was the person who committed those crimes and deemed him a recidivist. The trial court subsequently denied petitioner's post-trial motions and sentenced him to an indeterminate term of one to five years in prison for Count Seven, one to five years in prison for Count Eleven, and one to five years in prison for Count Twelve, to be served concurrently. With regard to petitioner's conviction on Count One, the trial court sentenced petitioner to life in prison with the possibility of parole based on his recidivist standing, and ordered that his life sentence run consecutively to his three concurrent one- to five-year sentences.

Petitioner's direct appeal to this Court raised four grounds for relief. In the first three of those grounds, petitioner claimed that the trial court abused its discretion by allowing the State to introduce evidence under Rule 404(b) of the Rules of Evidence where (1) the notice to do so was deficient as a matter of law; (2) the evidence of petitioner's alleged sexual misconduct regarded his non-custodial step-daughter, A.F., who was not named as a victim in petitioner's indictment; and (3) A.F.'s testimony (that petitioner allegedly "passed [her] around" so that friends and relatives could sexually abuse/assault her) had no evidentiary support. In a fourth ground, petitioner claimed the trial court's errors were cumulative and prevented him from receiving a fair trial. While we criticized the State's use of Rule 404(b) evidence at petitioner's trial, we ultimately affirmed petitioner's conviction and sentence in *State v. Nathan S.*, No. 13-0767, 2014 WL 6676550 (W. Va. Nov. 21, 2014)(memorandum decision).

On February 2, 2015, petitioner filed a pro se petition for habeas relief. Thereafter, the habeas court appointed Attorney Ben J. Crawley-Woods who drafted petitioner's amended petition alleging (1) ineffective assistance of trial counsel; (2) insufficient evidence; (3) ineffective assistance of appellate counsel for failing to raise insufficient evidence and unconstitutionally disproportionate sentence; (4) improper admission of Rule 404(b) evidence, i.e., an

(Count Ten) and choked him (Count Eleven); and (5) struck H.S., a minor, with a metal spoon on the leg (Count Twelve) and hit her in the eye with a baseball bat (Count Thirteen).

[3] Petitioner's wife was also charged in a separate indictment with five counts of child abuse causing bodily injury and was tried with petitioner.

alleged/uncharged sexual assault; and (5) cumulative error by trial and appellate counsel. Petitioner's current habeas counsel, Patrick Kratovil, stands on Mr. Crawley-Woods's amended petition.

In its November 13, 2017, order, the habeas court denied relief on all grounds. Petitioner now appeals.

> In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review.

Syl. Pt. 1, *Mathena v. Haines*, 219 W. Va. 417, 633 S.E.2d 771 (2006).

Petitioner raises two assignments of error on appeal.[4] Petitioner first argues that the circuit court committed reversible error by failing to conduct an omnibus evidentiary hearing on petitioner's habeas claims. We have said, "[a] court having jurisdiction over habeas corpus proceedings may deny a petition for a writ of habeas corpus without a hearing . . . ." Syl. Pt. 3, in part, *Tex S. v. Pszczolkowski*, 236 W. Va. 245, 778 S.E.2d 694 (2015) (citing Syl. Pt. 1, *Perdue v. Coiner*, 156 W. Va. 467, 194 S.E.2d 657 (1973)); *see also* W. Va. Code § 53-4A-7(a). "If the court determines that an evidentiary hearing is not required, the court shall include in its final order findings of fact and conclusions of law as to why an evidentiary hearing was not required." *Tex S.* at 252-53, 778 S.E.2d at 701-02 (quoting Rule 9(a) of the Rules Governing Post-Conviction Habeas Corpus Proceedings in West Virginia).

The habeas court satisfied *Tex S.* because it included in its order that "a hearing would not aid the [c]ourt" because "it is clear from the record that [p]etitioner is not entitled to any relief for his claims." Moreover, the order contained extensive findings of fact and conclusions of law on each of petitioner's claims for relief. Having reviewed the order on the appeal in light of petitioner's assignments of error and the record in this case, we concur that an evidentiary hearing would not have aided the court, because petitioner was entitled to no relief. Accordingly, we find that the circuit court did not err in choosing not to hold an evidentiary hearing on petitioner's

---

[4] As noted above, petitioner clearly raised *only* two assignments of error on appeal: (1) the habeas court's decision not to conduct an evidentiary hearing, and (2) ineffective assistance of trial and appellate counsel. Nevertheless, following his argument for this second assignment of error, petitioner wanders into a discussion regarding the sufficiency of the evidence at trial, and whether his recidivist sentence was constitutional. Rule 10(c)(3) of the West Virginia Rules of Appellate Procedure provides, in relevant part, that a petitioner's "brief opens with a list of the assignments of error that are presented for review" and that the "statement of the assignments of error will be deemed to include *every* subsidiary question fairly comprised therein." (Emphasis added.) Because petitioner fails to assign error to the sufficiency of the evidence at trial or to the constitutionality of his recidivist sentence in accordance with Rule 10(c)(3), we decline to address those issues herein.

habeas claims.

Petitioner's second and final assignment of error is that the circuit court committed reversible error by denying his ineffective assistance of trial and appellate counsel claims. Pursuant to syllabus point 5 of *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995):

> In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

With regard to his trial counsel, petitioner argues that he failed to (1) call witnesses who may have provided an alibi for petitioner regarding the charges that he choked A.F. and I.F. (i.e., he was in jail for part of the time during which the choking incidents allegedly occurred); (2) call witnesses from DHHR who could have testified that the claims of child abuse against petitioner were unsubstantiated; (3) timely move for an independent medical examination of H.S., which would have established that H.S. had no injury from the alleged striking with a metal spoon; (4) secure witnesses and the admission of H.S.'s medical records that would have shown that the scar on her leg resulted from a MRSA infection, and not from any abuse by petitioner; and (5) notify the circuit court at sentencing that the imposition of a life sentence for a recidivist under West Virginia Code § 61-11-18(c) is discretionary. Petitioner also argues that the trial court erred in admitting irrelevant, inflammatory, and unfairly prejudicial evidence of an alleged/uncharged sexual assault under Rule 404(b).

The habeas court addressed petitioner's claims of ineffective assistance of trial and appellate counsel under *Miller*'s second prong and found that petitioner was entitled to no relief because he could not show that, but for trial counsel's unprofessional errors, the result of the proceedings would have been different. *See* Syl. Pt. 5, *State ex rel. Daniel v. Legursky*, 195 W. Va. 314, 465 S.E.2d 416 (1995).[5] Having reviewed the circuit court's November 12, 2014, comprehensive order that addressed each of petitioner's claims of ineffective assistance of counsel, we find no error. Accordingly, we hereby adopt and incorporate the circuit court's well-reasoned findings and conclusions into this memorandum decision.[6]

---

[5] Pursuant to syllabus point 5 of *Legursky*, the circuit court was not required to address both prongs of the *Miller* test:

> In deciding ineffective assistance of counsel claims, a court need not address both prongs of the conjunctive standard of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995), but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test.

[6] The habeas court's findings and conclusions regarding petitioner's claim of ineffective assistance of *trial* counsel may be found on pages 4 through 8 of the order on appeal. The habeas

4

The Clerk is directed to attach a copy of the circuit court's November 13, 2017, order to this memorandum decision.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** March 23, 2020

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

---

court's findings and conclusions regarding petitioner's claim of ineffective assistance of *appellate* counsel may be found on pages 14 through 17 of the order on appeal.

/s/ Michael Lorensen
Circuit Court Judge
Ref. Code: 17UWEX9X

E-FILED | 11/13/2017 3:22 PM
CC-02-2015-C-65
Berkeley County Circuit Clerk
Virginia Sine

## In the Circuit Court of Berkeley County, West Virginia

NATHAN S████████,
Plaintiff,

vs.)

STATE OF WEST VIRGINIA,
Defendant

Case No. CC-02-2015-C-65

### Order Denying Writ of Habeas Corpus

Before the Court is the amended Petition for Writ of Habeas Corpus filed by Petitioner Nathan S████ ("Petitioner" or "Defendant"), with assistance of counsel Ben Crawley-Woods, Esq., on February 12, 2016. For the reasons set forth below, the amended Petition for Writ of Habeas Corpus is denied.

### FINDINGS OF FACT

1. On February 18, 2010, Petitioner was indicted on thirteen counts of child abuse causing bodily injury. The five victims named in the indictment were one of Petitioner's two biological children and four of his wife's five biological children. All five child victims resided with Petitioner and his wife and ranged in age from five to fourteen years when the abuse occurred.

2. Petitioner's wife was charged in a separate indictment with five counts of child abuse causing bodily injury.

3. Petitioner and his wife were tried together. The trial began on January 29, 2013, and lasted eleven days.

4. On February 13, 2013, the jury returned a verdict against Petitioner on four of the thirteen counts of child abuse causing injury. Specifically, the jury returned a verdict against Petitioner on Counts One (punching K.F.), Seven (choking A.F.), Eleven

1

(choking I.F.), and Twelve (hitting H.S. with a metal spoon).

5. Following the trial, the State filed a recidivist information against Petitioner, alleging that Petitioner had previously been convicted of two qualifying felony offenses.

6. On April 24, 2013, the recidivist trial commenced. That same day, a jury found Petitioner to be the same person who had previously committed the two felonies at issue.

7. On September 15, 2008, Petitioner was sentenced to an indeterminate term of one to five years' imprisonment for Counts Seven, Eleven, and Twelve. These sentences were ordered to run concurrently. Petitioner was sentenced to life imprisonment with the possibility of parole after fifteen years for Count One, due to his recidivist status. Petitioner's life sentence was ordered to run consecutively to the other sentences. Petitioner was also ordered to serve a ten-year period of supervised release and to register on the child abuse registry as a convicted child abuser for a period of ten years following his imprisonment.

8. On July 26, 2013, Petitioner, with assistance of counsel, filed a direct appeal with the West Virginia Supreme Court of Appeals.

9. On November 21, 2014, the West Virginia Supreme Court of Appeals affirmed Petitioner's conviction.

10. On February 2, 2015, Petitioner, acting pro se, filed a Petition for Writ of Habeas Corpus.

11. On February 13, 2015, Petitioner was appointed habeas counsel. After several attorneys were permitted to withdraw from the case, Ben Crawley-Woods, Esq., was appointed to represent Petitioner for the habeas proceeding.

12. On February 12, 2016, after several motions for extensions of time were granted,

2

Petitioner, with the assistance of Mr. Crawley-Woods, amended the Petition for Writ of Habeas Corpus.

13. On April 15, 2016, the Court directed the State to response to the amended Petition.

14. On July 29, 2016, the State filed its response, requesting that the Court dismiss the amended Petition.

15. On November 29, 2016, Petitioner filed his reply.

16. The matter is now ripe for adjudication.

## CONCLUSIONS OF LAW

In the amended Petition, Petitioner asserts five grounds for relief. Specifically, Petitioner alleges that: (1) his trial counsel provided ineffective assistance of counsel; (2) his convictions were based on insufficient evidence; (3) his appellate counsel provided ineffective assistance of counsel; (4) the trial court improperly admitted Rule 404(b) evidence of an uncharged sexual assault allegedly committed by Petitioner; and (5) the cumulative weight of the errors committed during the trial and appellate proceedings violated his due process rights. Petitioner requests that the Court hold an evidentiary hearing on the matter and ultimately enter a judgment of acquittal, grant a new trial on the four counts for which he was convicted, or order a new sentencing hearing.

Petitions for writs of habeas corpus are governed in part by West Virginia Code § 53-4A-1. The habeas corpus statute "contemplates the exercise of discretion by the court." *Perdue v. Coiner*, 156 W. Va. 467 (1973). The circuit court denying or granting relief in a habeas corpus proceeding must make specific findings of fact and conclusions of law relating to each contention raised by the petitioner. *State ex rel. Watson v. Hill*, 200 W. Va. 201 (1997). To sustain his or her petition, the petitioner must

3

prove his or her claims by a preponderance of the evidence. With these rules in mind, the Court will examine each of Petitioner's grounds for relief.

**17. First Ground for Relief: Ineffective Assistance of Trial Counsel**

Petitioner alleges that his trial counsel provided ineffective assistance by failing to: call certain witnesses at trial; introduce certain medical records into evidence at trial; and present relevant case law at sentencing. In West Virginia:

> [C]laims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

*State v. Miller*, 459 S.E.2d 114 (1995). When evaluating an ineffective assistance of counsel claim, a court need not address both prongs of the *Strickland* test. *State ex rel. Daniel v. Legursky*, 195 W. Va. 314, 321 (1995). Instead, a court may dispose of an ineffective assistance claim "based solely on a petitioner's failure to meet either prong of the test." *Id.*

In the present case, assuming *arguendo* that trial counsel's performance was deficient, the Court finds that Petitioner has not established that, but for his counsel's deficient performance, the result of the proceedings would have been different. Petitioner argues that his trial counsel should have called as witnesses the Department of Health and Human Resources ("DHHR") workers "who investigated . . . [Petitioner for] claims of abuse and found them to be unsubstantiated." Petitioner admits, however, that "[t]rial counsel called a plethora of witnesses who testified that they were familiar with the family and did not see any signs of abuse." While many of these witnesses were friends or family of Petitioner's, not all were,[1] and the Court does not believe that

4

additional testimony of the same substance would have altered the outcome. As Asmad Baray, M.D., testified, "it [is] possible to punch a child or smack a child and . . . not see bruises or visible signs of injury." The child victims also testified that Petitioner and his co-defendant instructed them to lie to DHHR officials or face increased abuse and deprivations and that they followed these instructions out of fear. The jury appears to have found Dr. Baray and the children credible and to have taken their testimony to heart, even though multiple witnesses testified that they could not see any signs of abuse. Therefore, the Court does not believe that additional testimony from DHHR workers that they could not see any signs of abuse would have altered the outcome of the trial.

Petitioner further argues that trial counsel should have called Petitioner's probation officer as a witness at trial "to provide a potential alibi on the charges of choking I.F. and A.F." Petitioner reasons that "[i]t is not clear from the trial record exactly when . . . the alleged choking occurred" and that, if the alleged incidents occurred prior to the family moving to Berkeley County, he would have been incarcerated and could not have choked his stepchildren. The Court notes that the child victims in this case testified that Petitioner and his co-defendant abused them for years and that, due to the children's ages, the passage of time between the abuse and the trial, and the numerous incidents the children were asked to recall, the children experienced difficulty providing specific dates for the incidents charged in the indictment. The Court also notes that, because there is no statute of limitations for a felony charge of child abuse causing bodily injury, the prosecution was not required to prove the date of the choking incidents. See State v. Chaffin, 156 W. Va. 264, 268 (1972) (declaring that "[p]roof as to time is not material where no statute of limitations is involved" and that "[n]o indictment .

5

. . shall be quashed or deemed invalid . . . for omitting to state, or stating imperfectly, the time at which the offense was committed, when time is not of the essence of the offense").

Regardless, the Court does not believe that the testimony of Petitioner's probation officer would have altered the outcome.[2] On February 18, 2010, an indictment was returned against Petitioner, alleging that Petitioner had choked I.F. and A.F. "between . . . September, 2008, and . . . April, 2009." The State then requested notice of any alleged alibi on May 26, 2010, approximately two-and-a-half years before Petitioner's trial. Petitioner failed to provide any alibi after the State's request or during the pretrial conference. It was not until after the trial, during which A.F. and I.F. experienced difficulty recalling the precise dates of events that occurred approximately four years prior, that Petitioner first mentioned a "potential alibi." However, Petitioner does not provide any detail as to this potential alibi. For example, Petitioner does not explain when he was incarcerated or to what extent his probation officer could have offered an alibi. Losh v. McKenzie, 166 W. Va. 762, 771 (1981) ("A mere recitation of [a ground for relief] . . . without detailed factual support does not justify the . . . holding of a hearing [or the issuance of a writ]"). Moreover, the Court does not believe that the limited alibi would have led the jury to discount the child victims' eyewitness testimony. Instead, it is highly likely that the limited alibi would have allowed the jury to more narrowly determine the time frame of when the choking incidents occurred, which the State did not need to prove. Therefore, the Court does not believe that the testimony of Petitioner's probation officer would have altered the outcome of the trial.

Petitioner also argues that trial counsel should have offered into evidence medical records to discredit H.S.'s testimony. H.S., who was eight years old when she

6

testified regarding matters that occurred approximately four years prior, testified that Petitioner struck her with a spoon, causing a cut that required stitches. H.S. also testified that, after receiving stitches, "germs [got] in it" and it became infected. Petitioner contends that:

> Petitioner's trial counsel . . . could find no records supporting H.S.'s testimony that she went to a hospital and got sewed up after being hit by Petitioner with a spoon;[3] however, he did find records documenting that she was treated at Winchester Medical Center in 2003 for a MRSA infection on her leg.

Petitioner appears to believe that the MRSA infection was unrelated to any cut, although there was testimony offered at trial indicating that the cut could have been how bacteria was able to enter the child's body, causing a MRSA infection. The Court finds, therefore, that Petitioner has not explained how the medical records would have discredited H.S.'s testimony or how the medical records would have altered the outcome of the trial.

Finally, Petitioner argues that his counsel provided ineffective assistance by failing to present relevant case law during sentencing. The Court notes that Petitioner is not arguing that his counsel failed to raise a meritorious argument during sentencing. In fact, the Court notes that, although Petitioner is contesting that his life sentence, imposed pursuant to West Virginia's recidivist statute, violates the proportionality principle of the federal and West Virginia constitutions, Petitioner's counsel raised this exact argument during sentencing. Instead, Petitioner is arguing that his counsel did not provide the relevant case law to validate the arguments raised and that, as a result, the trial court imposed an unconstitutionally disproportionate life sentence. In other words, Petitioner is basing his ineffective assistance of counsel argument on his belief that the court imposed an unconstitutionally disproportionate life sentence. However, as

7

the Court will discuss later in this order, Petitioner's life sentence is not disproportionate to his crimes. The basis of Petitioner's argument, therefore, is without merit. Consequently, because Petitioner cannot show that the alleged errors of his counsel were anything more than harmless, Petitioner's first ground for relief is denied.

18. Second Ground for Relief: Sufficiency of the Evidence

Petitioner alleges that there is insufficient evidence to sustain his convictions of Counts One, Seven, Eleven, and Twelve. Initially, the Court notes that Petitioner raised this argument at the trial level, after the State rested its case and in a post-trial motion, but that the argument was unsuccessful. Nevertheless, the Court will examine the merits of the argument. The West Virginia Supreme Court of Appeals has held that:

> [A] criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. As we have cautioned before, appellate review is not a device for [a] [c]ourt to replace a jury's finding with [its] own conclusion. On review, [a court] will not weigh evidence or determine credibility. Credibility determinations are for a jury and not an appellate court. On appeal, [a court] will not disturb a verdict in a criminal case unless [it] find[s] that reasonable minds could not have reached the same conclusion. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt.

*State v. Guthrie*, 194 W. Va. 657, 669–70 (1995).

For Petitioner's conviction of child abuse causing injury to stand, there must be evidence establishing that: (1) Petitioner was a parent, guardian, or custodian of the child victim; (2) Petitioner abused the child; (3) the abuse occurred in Berkeley County, West Virginia; and (4) the abuse resulted in bodily injury. *See* W. Va. Code § 61-8D-

8

3(a). "Bodily injury" is defined as "substantial physical pain, illness or any impairment of physical condition." W. Va. Code § 61-8B-1(9).

Count One charged Petitioner with punching K.F. in the side. To prove this charge, the State called K.F. as a witness. K.F. testified that, when she was eight years old, she resided with Petitioner (her step-father) and his co-defendant (her mother) at a trailer/camper in Bunker Hill, West Virginia. She stated that she would leave the trailer in the morning to go to school at Bunker Hill School. She testified that, on the morning of April 20, 2009, she and her mother started arguing. She believed the argument "was about me being late [for school]." She testified that, during the argument, she "was punched in the side by [Petitioner]." She explained that the punch hurt and made it hard to breathe. She stated that she cried. She testified that she told Kimberley Huff, her biological father's girlfriend, that she had been punched and that Ms. Huff took her to the hospital.

The State also called Ms. Huff as a witness. Ms. Huff testified that, on April 20, 2009, she was putting K.F. to bed when K.F. stated that her side was sore and hurt. Ms. Huff then testified that, the following day, K.F. told her that she had been punched and that "it hurts when I breathe now." Ms. Huff stated that she drove K.F. to the emergency room for examination and treatment.

Asmad Baray, M.D., and Janice Pratt, a registered nurse, also testified for the State. Dr. Baray and Ms. Pratt are employees of Hampshire Memorial Hospital and were working in the emergency room when K.F. was brought in. Ms. Pratt testified that K.F. complained of left rib pain and experienced pain every time "she took a deep breath." Ms. Pratt further testified that K.F. informed her that "she was struck in her left side . . . by someone named Nathan." Ms. Pratt stated that K.F. rated her pain as a

9

seven on a scale of one through ten, with one representing no pain and ten representing severe pain. Dr. Baray testified that, although "there [was] no obvious injury or obvious bruises," there was definitely an injury/trauma that was not apparent to the naked eye. Dr. Baray stated that he identified K.F. as a possible victim of abuse.

After reviewing the record, the Court finds that sufficient evidence was presented at trial to convict Petitioner of Count One. Petitioner primarily challenges whether the State proved that K.F. suffered a bodily injury, contending that Petitioner applied corporal punishment to K.F. and that "[c]orporal punishment, by its very nature, hurts . . . but does not satisfy the element of [bodily injury]." However, K.F. testified that Petitioner's actions caused her so much pain that it hurt to breathe a day later, warranting a trip to the emergency room. Such pain is not indicative of typical corporal punishment. Therefore, the Court believes that a rational jury could find on the evidence presented that Petitioner caused bodily injury to K.F. when he struck her. The evidence is not so weak as to render the verdict irrational. Consequently, Petitioner's argument that there is insufficient evidence to support his conviction of Count One is denied.

The Court will consider Counts Seven and Eleven together. Count Seven charged Petitioner with choking A.F. To prove this charge, the State called A.F. as a witness. A.F. testified that, when he was approximately fourteen years old, he lived with Petitioner (his step-father) and Petitioner's co-defendant (his mother). A.F. testified that he was getting tired of the abuse at home and that he was thinking about running away. A.F. stated that, when he was in the car with Petitioner and after Petitioner had pulled over to the side of the road, he told Petitioner he wanted to leave and live with his biological father. A.F. further stated that, after he told Petitioner he wanted to leave,

10

Petitioner started choking him. A.F. explained that he "felt like [he] was going to [pass out]." A.F. testified that the incident occurred in Berkeley County.

Count Eleven charged Petitioner with choking I.F. To prove this charge, the State called I.F. as a witness. I.F. testified that, when he was approximately fourteen years old,[4] he had an altercation with Petitioner (his step-father). Specifically, I.F. testified that:

> [W]e were in Berkeley County, and he, [Petitioner], ran out of cigarettes and [Petitioner and the co-defendant] thought that we took them and hid them from them, and I remember like as we were leaving, we immediately stopped . . . in the middle of the highway; he pulled [me and A.F.] out of the car . . . and held me while in the air and choked us and asked us where [the cigarettes] were at.

I.F. explained that he "[j]ust about" passed out from the choking. I.F. stated that Petitioner had choked him before and that, whenever Petitioner was drunk and angry, he would choke one of the children. A.F. corroborated I.F.'s testimony, declaring that he witnessed Petitioner choke I.F. on a road "somewhere in Berkeley County." While A.F. could not recall exactly where in Berkeley County the incident occurred, it was his testimony that it did occur in Berkeley County.

After reviewing the record, the Court finds that sufficient evidence was presented at trial to convict Petitioner of Counts Seven and Eleven. Petitioner contends that neither choking episode resulted in a bodily injury. However, A.F. testified that he felt like he was passing out when he was choked and I.F. testified that he "just about" lost consciousness. Because "bodily injury" is defined to include "*any* impairment of physical condition," the Court finds that it was not irrational for the jury to determine that the choking of A.F. and I.F., which resulted in the boys experiencing difficulty breathing to the point of almost losing consciousness, caused bodily injury. *See* W. Va. Code § 61-

11

8B-1(9) (emphasis added).

Petitioner further contends that the State did not prove that the choking incidents occurred in Berkeley County. Petitioner explains that A.M.F., Petitioner's oldest stepchild, testified that "she was present during the choking incident [of I.F.] and [that] it occurred near Petitioner's uncle's house in Virginia." However, viewing the evidence in the light most favorable to the prosecution and crediting all inferences the jury might have drawn in favor of the prosecution, it appears that A.M.F. was testifying regarding a different choking incident than the one charged in Count Eleven. Indeed, A.F. testified that A.M.F. was not present during the choking of I.F. that he described. Moreover, I.F. testified that Petitioner had choked him before and that Petitioner would choke his children whenever he was drunk and angry at one of them. The Court believes, therefore, that a rational jury could find on the evidence presented that, while A.M.F. witnessed a choking incident in Virginia, Petitioner also choked A.F. and I.F. in Berkeley County. Although Petitioner argues that the boys could not recall exactly where the choking incidents occurred in Berkeley County and instead seemed to infer that the incidents had occurred in Berkeley County,[5] such inferences were not irrational and were are allowed to be credited by the jury. *State v. Berry*, 239 W. Va. 226 (2017) (explaining that "[i]t is well established that [the] Court may accept any adequate evidence, including circumstantial evidence as support for a conviction"). Consequently, Petitioner's argument that there is insufficient evidence to support his convictions for Counts Seven and Eleven is denied.

Finally, Count Twelve charged Petitioner with hitting H.S. with a metal spoon on her leg. To prove this charge, the State called H.S., an eight-year-old, as a witness. H.S. testified that, when she was four years old and lived with Petitioner (her father)

12

and his co-defendant, she had an altercation with Petitioner. She further testified to the following:

Q.    Okay. Do you remember anything about metal spoons?
A.    Yes.
Q.    First of all what kind of metal spoons were they?
A.    Cooking.
Q.    Okay. Now, cooking spoons means a lot of things. Was it a big spoon or little spoon?
A.    Big.
Q.    Big spoon. Do you remember what the top of the spoon looked like? Was it just a spoon or did it have holes in it?
A.    It had holes in it.
Q.    Okay. Did you ever get hit with that spoon? . . .
A.    I don't remember.
Q.    Okay. You said you don't remember, so let's go back, and you have been in court before, is that right?
A.    Yes. . . .
Q.    Do you remember talking to us about a metal spoon and you getting hit with a metal spoon?
A.    (Nodded affirmatively.) . . .
Q.    Okay. . . . [L]et me go back a minute. Do you have any marks on your leg?
A.    Yes.
Q.    Okay. And is that a scar?
A.    Yes.
Q.    Do you remember how you got that scar?
A.    My dad with a wooden spoon. . . .
Q.    And when you got . . . you said you got hit by your daddy and that daddy is [Petitioner], is that correct?
A.    Yes.
Q.    And he hit [you with] a spoon and something happened to your leg, is that right?
A.    (Nodded affirmatively.)
Q.    What happened? What happened? What did you do?
A.    We went and had . . . they [sewed] it up and it was, like, they let all the germs get in it and so it had like something. . . .
Q.    And when that happened your mommy took you to the hospital and you healed up and now you have a scar, is that right?
A.    Yes.
Q.    Is that the only time you remember getting hit with a spoon?
A.    Yes. . . .
Q.    Let's talk about the wooden spoon. Can we do that, and can you describe the wooden spoon?
A.    Like it's [for] cooking. . . .
Q.    Did it have a thin sharp edge like a knife?

13

A.    Yes. . . .

The State also called A.F. as a witness. A.F. testified that "at the Bunker Hill house" in Berkeley County he witnessed Petitioner hit H.S. with a metal spoon in her leg, that H.S. screamed, and that her leg started bleeding. A.F. described the spoon as a metal cooking spoon with holes in it. The State also called several witnesses, included Barbara Hailey and Deputy Gibbons, who testified to observing a scar on H.S.'s leg.

After reviewing the record, the Court finds that sufficient evidence was presented at trial to convict Petitioner of Count Twelve. Petitioner challenges H.S.'s recollection of events, noting the inconsistences in testimony of whether the spoon was metal or wooden. However, it is not unusual for inconsistencies to exist in testimony, particularly when an eight-year-old child is testifying regarding an event that occurred four years prior. Indeed, it was the duty of the jury to examine the inconsistencies and to evaluate the witness's credibility. In this case, the jury credited H.S.'s and A.F.'s testimony, and this Court is not entitled to re-weigh the evidence or to substitute its judgment for that of the jury's.

Petitioner further challenges whether H.S.'s testimony that she received stitches, of which the prosecution did not admit any medical records to corroborate, is sufficient to show that H.S. sustained a bodily injury. However, medical records are not needed to establish bodily injury and both H.S.'s testimony that she required stitches and A.F.'s testimony that her wound bled were sufficient for the jury to find that a bodily injury occurred. Indeed, the evidence is not so weak as to render the verdict irrational. Consequently, Petitioner's argument that there is insufficient evidence to support his convictions is denied.

19. Third Ground for Relief: Ineffective Assistance of Appellate Counsel

14

Petitioner alleges that his appellate counsel provided ineffective assistance by failing to raise the issues of insufficient evidence and an unconstitutionally disproportionate sentence on direct appeal. As previously discussed:

> In . . . West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

*State v. Miller*, 459 S.E.2d 114 (1995). When evaluating an ineffective assistance of counsel claim, a court need not address both prongs of the *Strickland* test. *State ex rel. Daniel v. Legursky*, 195 W. Va. 314, 321 (1995). Instead, a court may dispose of an ineffective assistance claim "based solely on a petitioner's failure to meet either prong of the test." *Id.*

The Court finds that Petitioner fails to meet the requirements of the *Strickland* test. Regarding Petitioner's argument that his appellate counsel should have pursued the issue of insufficient evidence, the Court notes that Petitioner's counsel did raise the issue in a motion for acquittal after the State rested its case and in a post-trial motion but that the court found each time that the evidence was sufficient to sustain a verdict against Petitioner for Counts One, Seven, Eleven, and Twelve.[6] While Petitioner's appellate counsel did not raise the issue of insufficient evidence on direct appeal, Petitioner has not shown that such an argument would have been effective. Indeed, the Court has already found that the Counts on which Petitioner was convicted were supported by sufficient evidence. Because appellate counsel cannot be ineffective for failing to raise an unsuccessful argument on appeal, Petitioner's argument lacks merit and is denied.

15

Regarding Petitioner's argument that his appellate counsel should have argued on direct appeal that his sentence was unconstitutionally disproportionate to his crimes, Petitioner makes little effort to show that such an argument would have been effective. Instead, Petitioner contends that such an argument should have been automatically raised on appeal, whether or not it would have been effective. However, counsel cannot be found ineffective for failing to raise an unsuccessful argument, and Petitioner has not established that an appeal on the grounds of an unconstitutional sentence would have been successful.

Excessive criminal sentences violate the proportionality principle implicit in the cruel and unusual punishment clause of the Eighth Amendment of the United States Constitution and Article III, § 5 of the West Virginia Constitution. *State v. Davis*, 189 W. Va. 59, 61 (1993). In the present case, Petitioner was sentenced to life imprisonment with the possibility of parole after fifteen years pursuant to West Virginia's recidivist statute. *See* W. Va. Code § 61-11-18 ("When it is determined . . . that [a] person . . . ha[s] been twice before convicted in the United States of a crime punishable by confinement in a penitentiary, the person shall be sentenced to be confined in the state correctional facility for life."). "[I]t has been specifically recognized that sentences enhanced under West Virginia's recidivist statute are just as susceptible to this rule as ordinary sentences." *Id.* Regarding the appropriateness of a life sentence under the recidivist statute, the West Virginia Supreme Court of Appeals has stated:

> We give initial emphasis to the nature of the final offense which triggers the recidivist life sentence, although consideration is also given to the other underlying convictions. The primary analysis of these offenses is to determine if they involve actual or threatened violence to the person since crimes of this nature have traditionally carried the more serious penalties and therefore justify application of the recidivist statute.

16

*Id.*

The Court finds that there is no merit to Petitioner's contention that his life sentence is disproportionate to his crimes. Petitioner's third offense which triggered the recidivist life sentence was child abuse resulting in injury, a crime of violence involving an eight-year-old child who "falls within a class of victims that the laws of our State seek most to protect." *State v. James*, 227 W. Va. 407, 417 (2011). Therefore, the Court finds no question that the application of the recidivist statute was appropriate for such an offense.

Moreover, Petitioner's two previous qualifying offenses were both driving under the influence in the third degree. The West Virginia Supreme Court of Appeals has held that "driving under the influence is a crime of violence supporting imposition of a recidivist sentence." *State ex rel. Appleby v. Recht*, 213 W. Va. 503, 516 (2002). This Court agrees and notes that Petitioner's driving under the influence crimes posed a real risk of serious harm to others and that it is sheer fortuity that Petitioner killed no pedestrians or other drivers while behind the wheel.

After reviewing Petitioner's three qualifying offenses, it is clear that Petitioner has a propensity to engage in criminal activity involving threatened and actual violence and that the application of the recidivist statute was warranted. *See State v. Davis*, 189 W. Va. 59, 62 (1993) ("[W]hile not the exclusive determining factor, the propensity for violence on the part of the defendant is an important factor to be considered before applying the recidivist statute"). Therefore, because Petitioner has not shown that his sentence was unconstitutionally disproportionate to his crimes and because appellate counsel cannot be ineffective for failing to raise an unsuccessful argument on appeal, Petitioner's argument lacks merit and is denied.

17

## 20. Fourth Ground for Relief: Admission of Rule 404(b) Evidence

Petitioner alleges that the trial court improperly admitted at trial Rule 404(b) evidence of an uncharged sexual assault allegedly committed by Petitioner. Specifically, Petitioner is referring to the testimony of his wife's oldest daughter, A.M.F., who testified that:

> [W]hen she was thirteen, petitioner had gotten her drunk and raped her. A.M.F. claimed that her mother saw the rape, and said only that, 'If you want him, you can have him.' A.M.F. also testified that she believed petitioner had 'prostituted [her] to family and friends.' In regard to the latter claim, A.M.F. testified that (1) petitioner's cousin sexually assaulted her twice when she was fifteen; (2) petitioner's stepbrother assaulted her when she was sixteen; (3) petitioner's friend sexually assaulted her during the winter of 2007; and (4) petitioner and her mother allowed her to be involved with a man who was twenty years older than she. A.M.F. stated that these events happened in Hampshire County. A.M.F. also testified to other forms of abuse and neglect she experienced in petitioner and her mother's home. A.M.F. claimed that petitioner provided her with alcohol, cigarettes, and drugs when she was a teenager, and that petitioner and her mother (1) ate better quality food than did the children; (2) locked up the food in the home so that the children often went hungry, which was particularly problematic for A.M.F. given that she was diabetic; (3) forced the children to live in deplorable conditions; (4) made the children perform foot rubs on them in exchange for food; and (5) sold the children's toys and presents to obtain beer and cigarettes.

*State v. Nathan S.*, No. 13-0767, 2014 WL 6676550, at *2 (W. Va. Nov. 21, 2014).

The Court finds, however, that the issue of whether A.M.F.'s testimony was properly admitted was fully and finally adjudicated on the merits on direct appeal by the West Virginia Supreme Court of Appeals, which upheld the trial court's admission of the testimony. *See State ex rel. Strogen v. Trent*, 196 W. Va. 148, 150 n.1 (1996) ("A judgment denying relief . . . is *res judicata* on questions of fact or law which have been fully and finally litigated and decided [.]"). Indeed, Petitioner does no more than "refer[ ] this Court to the entire record in the underlying criminal matter and . . . all arguments made therein and on appeal therefrom." Petitioner does not raise any new information

18

that was not considered by the West Virginia Supreme Court of Appeals or explain why this Court should revisit the issue. Therefore, Petitioner's fourth ground for relief is denied.

## 21. Fifth Ground for Relief: Cumulative Errors

In his fifth ground for relief, Petitioner argues that the cumulative weight of all of the errors alleged above resulted in a violation of his due process rights. The West Virginia Supreme Court of Appeals has recognized the cumulative error doctrine:

> Where the record of a criminal trial shows that the cumulative effect of *numerous errors* committed during the trial prevented the defendant from receiving a fair trial, his conviction should be set aside, even though any one of such errors standing alone would be harmless error.

Syl. pt. 5, *State v. Smith*, 156 W.Va. 385 (1972) (emphasis added); *see also State v. Tyler G.*, 236 W. Va. 152, 165 (2015). In the present case, however, Petitioner has not established that any error occurred, let alone that numerous errors occurred. Assuming *arguendo*, however, that Petitioner has proven that his trial counsel provided a deficient performance, Petitioner has not shown that the performance affected the outcome or rose to the level of tainting the entire trial. Therefore, Petitioner's fifth ground for relief is denied.

## 22. Remaining Grounds from Losh List

Petitioner has provided a list, pursuant to *Losh v. McKenzie*, 166 W. Va. 762 (1981), of all of the grounds for relief that he has waived in the instant habeas proceeding. However, Petitioner opted not to waive multiple grounds for relief that he nonetheless failed to address in the amended Petition. Because "[a] mere recitation of [a ground for relief] . . . without detailed factual support does not justify [relief]," all of remaining grounds for relief that Petitioner has not waived but also has not addressed

19

in the amended Petition are denied at this time. *Losh*, 166 W. Va. at 771.

## CONCLUSION

Because it is clear from the record that Petitioner is not entitled to any relief for his claims and that a hearing would not aid the Court, the amended Petition for Writ of Habeas Corpus is denied and dismissed.

The Clerk shall enter this final order dated as directed below and shall transmit attested copies to all counsel of record, including the Prosecuting Attorney for Berkeley County and Ben Crawley-Woods, Esq., counsel for Petitioner.

[1] In fact, despite Petitioner's claim that his trial counsel failed to call DHHR workers as witnesses, the Court notes that Petitioner's trial counsel called Wendy Kim Shackleford as a witness, a child services worker with twenty years of experience, who testified that she did not see any signs of abuse. However, despite this unbiased testimony, the jury credited the testimony of the children over the testimony of Ms. Shackleford.

[2] Petitioner provides no facts establishing how his probation officer would have testified, nor does he affirmatively state that the probation officer would have testified in his favor. The Court also notes that Petitioner has provided a list of the witnesses that he would like to call at an evidentiary hearing and that the probation officer does not appear on this list.

[3] H.S. could not remember the name of the hospital that she went to for stitches.

[4] A.F. and I.F. are twins.

[5] The boys testified that they were in Berkeley County before the choking incidents occurred and that Petitioner did not drive far enough to cross state lines before pulling over to choke them.

[6] The trial court sustained Petitioner's motion for acquittal as to Count Ten.

**/s/ Michael Lorensen**
Circuit Court Judge
23rd Judicial Circuit

Note: The electronic signature on this order can be verified using the reference code that appears in the upper-left corner of the first page. Visit www.courtswv.gov/e-file/ for more details.

20